.LAMME, appellant, *v.* DODSON ET AL., respondents.

REAL ESTATE — *Parol agreement to sell — What possession is a part performance — Adverse possession.*— The proof showed legal title in L. since October, 1871; that W. was occupant of premises before L. acquired title, and afterwards acknowledged L.'s title, and made parol agreement for purchase of premises to be paid for in specified work; that L. made demand for this work, but it never was performed by W., who was still in possession of the premises at the time of his death, in February, 1881.

In action by L. against W.'s executor and the executor's tenant for possession on ground of legal title, to which defendants pleaded adverse possession under statute of limitations, and plaintiff replied possession under parol agreement to purchase on conditions never performed:

*Held,* that it was error to charge jury to find for defendants by reason of adverse possession; the question of adverse possession should have been submitted to the jury; that a parol agreement for sale of real estate is void unless there is part performance, and that possession

of premises under a previous holding is not such part performance; that plaintiff was under no obligation to file as a claim against the estate the estimated value of the work that decedent was to perform in payment of the premises.

A party who desires to avail himself of an equitable title must plead it specially or will be excluded from giving evidence thereon. *Reece* v. *Roush*, 2 Mont., 590, considered and affirmed.

### *Appeal from First District, Gallatin County.*

J. J. DAVIS, F. K. ARMSTRONG and E. W. & J. K. TOOLE, for appellants.

The action is ejectment, and the following are the issues made by the pleadings: The appellant alleges title in himself, demand of possession, and unlawful detention by the respondents. The answer admits the demand for possession, denies title in the appellant, and for *new matter* avers title by adverse possession, *no equitable title being set up or relied upon.* Appellants, in reply to this *new matter*, set up an oral contract to sell and convey to the predecessor in interest of defendants, Thomas Warfield, deceased, upon the condition precedent that he should erect one-half of a certain brick wall on adjoining property, owned by appellant, upon which he was about to erect a building, and that this was the character and condition of his possession.

The evidence shows that deceased was a tenant of appellant's at the time of the alleged oral contract. That there was, consequently, no change or delivery of possession under the contract; that not a cent of any consideration was paid, and that the only consideration upon which deceased was entitled to a deed or title was upon the performance of the condition precedent in the erection of the wall. That he never erected the wall, made any effort to do so or contributed one cent towards it. That even the cost of so building was not tendered by deceased or offered by the pleadings. In fact, the defendant has asked no benefit from the verbal agreement.

He stands on the statute of limitations and nothing else. The appellant shows a perfect legal title.

The case, therefore, stood thus in 1878: Appellant was and is the legal owner of the premises. He made a verbal agreement with deceased, who was in possession as tenant, to sell upon condition that he should build a certain brick wall; deceased failed to build it. Appellant duly demanded possession, which was refused. No possession changed or was delivered under this oral agreement; no part of any consideration was paid, and even the condition precedent upon which the verbal contract depended was not performed. Deceased never claimed in his own *right* exclusive of *any other*, but simply a contingent right upon building the wall. There is no conflict as to the facts of the case. 3 McLean, 457; Tyler on Eject. 216; 5 Wend. 26; 4 Binn. 77; 7 Serg. & Rawle, 297; *Heath* v. *Wallace*, 53 Cal. 436; 12 Nev. 393.

1st. The verbal agreement to sell, without payment of consideration or delivery of possession under it, was void. See Statutes, p. 000, sec. 000.

2d. Defendants should have pleaded and relied upon their equitable title, if they had any.

3d. The failure to perform the condition precedent, even if valid and in writing, defeated defendant's equitable title and deprived him of such a defense. *Bowen* v. *Irons*, 4 Am. Dec. 686; *Moore* v. *Skidmore*, 12 Am. Dec. 333; Tyler on Ejectment, p. 40, citing 47 Barb. 163; 3 id. 576; 7 id. 74; 34 id. 352; 21 Wend. 230; 1 Story's Equity Juris. sec. 736.

4th. Defendants have not pleaded, or relied upon, or proven a single equitable right, or done a single act that would not otherwise have been done, so far as the evidence shows, had the contract not been made.

It is useless, under the pleadings, as we view it, to discuss the contract at all, except in so far as it bears upon the case on account of the plea of the statute of limitation.

HENRY N. BLAKE, for respondents.

The following facts appear in the transcript: The action was commenced to recover the possession of real property. The complaint alleges that Lamme has been the owner of the property since October 6, 1871; that possession thereof was demanded June 9, 1881, of Dodson, and August 24, 1881, of Nevitt, and that the possession of said Dodson and Nevitt has been wrongful since the dates of said demands. Lamme bought the property of William H. Tracy, October 6, 1871, and entered into a contract in 1872 with Thomas B. Warfield to sell the same and execute a conveyance when Warfield should erect a brick wall for Lamme. Warfield, in 1872, tore down a log house on the land and erected the building which was thereon at the trial. Testimony of Dodson, Transcript, p. 33.

Warfield remained in the possession of the property until his death, February 13, 1881. Dodson, as the executor of the will of Warfield, took possession of the property, and the same was duly returned in the inventory of the estate of Warfield. Inventory, Transcript, p. 35.

Dodson has no interest in the property except that as such executor. Nevitt has no interest in said property except that of tenant of said Dodson, as such executor.

1. A formal delivery of the property to Warfield by Lamme was not necessary. Warfield was in the possession thereof when Lamme bought the same, and remained in the quiet possession until his death, about ten years. A delivery would be presumed from these facts. *Reece* v. *Roush*, 2 Mont. 593; *Love* v. *Watkins*, 40 Cal. 547.

2. No rent was ever demanded of Warfield by Lamme, and no rent was ever paid by Warfield. The relation between Lamme and Warfield was that of vendor and vendee, and not that of landlord and tenant. Testimony in Transcript.

3. The plaintiff in ejectment must show a right to the possession of the property, and proof of the legal title is insufficient. *Porter* v. *Garrissino*, 51 Cal. 559; *Meeks* v. *Kirby*, 47 Cal. 168; *Owen* v. *Fowler*, 24 Cal. 193; *Owen* v. *Morton*, id. 374; *Willis* v. *Wozencraft*, 22 Cal. 608–612.

4. Lamme commenced no action against Warfield. Dodson, as the executor, had possession of the property. Under the laws of the territory, Dodson, as the execu-tor, was entitled to such possession until the estate of Warfield was settled, and the action of ejectment was brought prematurely. R. S. Mont.; Prob. Pr. Act, § 127; *Meeks* v. *Kirby*, 47 Cal. 168; *Chapman* v. *Hollister*, 42 Cal. 462.

5. The complaint does not allege that the claim of Lamme was ever presented to the executor, and thereby fails to state facts sufficient to constitute a cause of ac-tion. R. S.; Prob. Pr. Act, § 157, p. 268.

"No holder of any claim against an estate shall main-tain any action thereon, unless the claim is first presented to the executor." *Hentsch* v. *Porter*, 10 Cal. 559, 560.

Dodson testifies that Lamme has not presented any claim against the estate of Warfield to him as executor. Transcript, p. 33.

6. Lamme, in his complaint, relies wholly on his legal title, and cannot rely on an equitable title set forth in his replication. *Seaton* v. *Son*, 32 Cal. 481.

7. If, in ejectment, the answer is a general denial, the defendant may prove any fact tending to show that plaintiff had no right of action when the action was commenced. It was not necessary for Dodson to set up the character of the possession by Warfield under Lamme. *Semple* v. *Cook*, 50 Cal. 26.

8. Upon the failure of Warfield to pay for the wall re-ferred to in the pleadings and evidence, after a demand therefor, Lamme had a claim for the cost of building such wall against Warfield and Dodson, as such executor,

and should have presented the same for payment. *Willis* v. *Wozencraft*, 22 Cal. 617.

9. The replication of Lamme and his evidence in rebuttal show that Dodson had the rightful possession of the property under the rules of law hereinbefore stated.

10. The removal of the log-house by Warfield, and the erection of the building by Warfield on the land, constituted, under the circumstances, an adverse possession within the meaning of the statutes of this territory. R. S.; Code Civ. Pr. §§ 29, 30, 31, 32, 36; *National Min. Co.* v. *Powers*, 3 Mont. 344, and cases there cited.

#### REPLY OF APPELLANTS.

We shall proceed in the examination of the questions involved in this case in the order in which they are presented by the record. In doing this we are led first to inquire into the issues that are tendered by the pleadings. In carrying into effect the object of our code practice, it is of the utmost importance to ascertain exactly what is alleged upon the one side and denied upon the other, and what, if any, affirmative facts are set up in the answer upon which a recovery could be had, or the action of the plaintiff thereby defeated, together with the issues tendered by the replication, upon this new or affirmative matter. It is a salutary and universal rule that the rights of litigants must be determined by the issues framed by their pleadings, and cannot be hypothecated upon something outside of them. It will be seen from the complaint in this case that the plaintiff in this action of ejectment has set up his legal title to the property, and seeks to recover upon it alone. The defendants in their answer deny the allegations of this complaint, with the exception of the demand for the possession of the property; whereby they put in issue this legal title of the plaintiff, and, as new or affirmative matter upon which they rely, set up the statute of limitation of this territory. The legal title thus denied, and the statute of limitation thus

pleaded, are the sole and only issues tendered by the defendant and upon which he can base his defense. They nowhere set up or rely upon an equitable defense, but content themselves by putting plaintiff to the proof of his legal title, and taking upon themselves the burthen of showing a title by adverse possession. Upon this new matter setting up the statute of limitation the plaintiff takes issue by denial, and unnecessarily sets up a certain oral agreement to show that the possession thus alleged to be held by defendants was not adverse or under claim of title exclusive of any other right, but that such claim was subject to, and in full recognition of, the right of plaintiff to the performance of a certain condition precedent, before it attached at all. Hence we say that the only issues upon which the respective parties must stand or fall are the legal title tendered by the plaintiff and the title under the statute of limitation presented by defendants.

Upon these issues we will first examine the propositions in this case, after which we will discuss it under the evidence presented by the record (and upon which there is no conflict), without reference to any pleadings whatever; involving in the one instance the strict legal title which is alone put in issue, and in the other a bare semblance of an equitable claim, based solely upon the evidence adduced on the trial, as explanatory of the character of the possession held by defendants. Upon these propositions we invite the attention of the court to the following points and authorities, which we earnestly insist are conclusive of this case:

1st. There being nothing but a legal title set up by plaintiff, upon it he must recover, if at all. The denial of such legal title puts it alone in issue, and admits of only such evidence on the part of defendants as would tend to defeat it or establish a better legal title in them. The equitable jurisdiction of the court is in nowise invoked by this part of the pleadings. See Remedies and

Remedial Rights, Pomeroy, p. 106 *et seq.*, and secs. 87, 90, 91 and 94; *Clarke* v. *Lockwood,* 21 Cal. 220.

2d. There never was a question but that an equitable defense, since the adoption of the code, which alone permitted such a defense to an action at law, in order to be available to defendant for any purpose, must be as fully pleaded as if presented by an original bill. The only question upon this subject in which the courts at all differed was upon the proposition whether the defendant could rely upon the facts thus pleaded as a negative defense, or whether he should ask and obtain affirmative relief. The legal title, according to an unbroken line of authorities, must prevail, unless an equitable one is pleaded and proven. *Cadiz* v. *Majors,* 33 Cal. 288; *Kenyon* v. *Quinn,* 41 Cal. 325; *Follett* v. *Heath,* 15 Wis. 601; *Congor* v. *Parker,* 29 Ind. 380; *Hecks* v. *Shepherd,* 4 Lansing, 325, 327; *Dobson* v. *Peora,* 12 N. Y. 256; *Philips* v. *Gorham,* 17 N. Y. 270; *Lamme* v. *Kintzing,* 1 Mont. 290; 1 Van Santvoord's Pl. (Moak's ed.) 687.

And to the same effect, that an equitable defense in order to be available as a negative defense must be pleaded, is fully supported by Associate Justice Blake in a well considered opinion in the case of *Reece* v. *Roush,* cited by defendants' counsel (2 Mont. 590), in which he cites *Cadiz* v. *Majors,* 33 Cal., and *Kenyon* v. *Quinn,* 41 Cal. *supra*; also *McCauly* v. *Fullon,* 44 Cal. 362, and *Towney* v. *True,* 45 Cal. 105. See, also, *Myendorff* v. *Frohner,* 3 Mont. 282 *et seq.*

Hence we see that the only legitimate defense left under these pleadings is the adverse possession relied upon by defendants. The verdict and judgment, if plaintiff made out his legal title, must be based upon this defense alone, if defendants succeed at all. If, then, we show by the authorities that they cannot recover upon the uncontradicted facts established in this case, under this allegation of adverse possession, as we have shown that an equitable defense is unavailable unless pleaded

and proven, and that the legal title of plaintiff must prevail, then we say that there is nothing left of defendants' pretended claim, and this case should be reversed. The record unequivocally shows that the legal title is in the plaintiff. How, then, if at all, has he lost it? Defendants say by an open, notorious, hostile possession by them and deceased, under a claim of title exclusive of any other right for the full statutory period. This was a question of fact, and should have been submitted to the jury, which was not done. See Record, p. 43; see, also, Revised Statutes, p. 83, sec. 239; Angell on Limitations, p. 389, 4th ed.; *Jackson ex dem. Jadwin* v. *Joy,* 9 Johns. 112; *Beckman* v. *Stephens,* 13 Johns. 496; *Gayetty* v. *Bethume,* 14 Mass. 55; *Sparkeman* v. *Partee,* 1 Paine, 466; *McClung* v. *Rass,* 5 Wheat. 124; *Cummings* v. *Wyman,* 10 Mass. 468.

And if the judge assumes to direct the jury how to find, when there is a question as to whether the possession was adverse, a new trial will be ordered. This is just what the judge did in this case. *Jackson* v. *Jadwin,* 9 Johns. 102; *Runcom* v. *Dae,* 5 Barn. & Cress. 696; *Stephens* v. *Deming,* 2 Aiken, 112; *Pray* v. *Pierce,* 7 Mass. 383; *Helen's Lessee* v. *Howard,* 2 Har. & McH. 76. And see Adams on Ejectment (4th ed.), 600, 601.

But above and beyond all, the possession of defendants and the deceased, during his life-time, was not adverse. The statute of limitation was never set in motion. There never was any designed, in fact, or wrongful entry by any one claiming the freehold; no actual ouster or expulsion of the plaintiff, or any act tantamount thereto.

If this question, which was the only one left after plaintiff had shown his legal title from the United States down to him by proper conveyances, had been submitted to the jury, but one verdict could have been rendered, but one conclusion reached. The evidence, uncontradicted, unequivocally shows that the possession held was under a verbal contract to sell, dependent upon the sin-

gle condition precedent and solitary consideration that the deceased would construct a certain brick wall, which he never did.

This robbed his possession of its adverse character, defeated the only defense that was available, and entitled the plaintiff to recover. Here the defendants and their predecessors in interest were in possession and held it under an invalid contract, and one which would only be enforced in equity upon showing a full and complete compliance with all the conditions upon their part. It would be a monstrous doctrine to promulgate, that a person under an oral contract to purchase land while in possession of it could remain in default, by reason of which he was not entitled to recover in equity, set up his laches and possession as a defense, and thereby deprive the owner of the land of its purchase price. If he had an equitable claim to the land capable of being enforced, he should assert it in his pleading, rely upon and prove it at the trial.

The possession of defendants and their predecessors never could in any sense be regarded as adverse until default was made in the erection of the wall, which was a condition precedent to his acquisition of a title to it, if, indeed, it could even then be so considered. This was the very thing that the parties contracted for, the performance of which alone gave them a right to a deed. It was the only act or thing to be done, which formed the consideration upon which the oral contract depended; it was not performed, and cannot be supplied by the possession simply held during the continuance of the contract. Since the default in building the wall has occurred, up to the date of the bringing of this suit, the statutory time has not expired, even if the possession since that time is adverse, which we deny.

In the absence of the assertion of an equitable title, as in the case at law, it stands thus: A. contracts orally to sell to B. his farm for $20,000. He agrees to pay for it

in five years, and is let into possession accordingly. At the end of this time he pleads the invalidity of the contract, repudiates the demand, and claims title under the statute of limitations.

Without a tender of the money he has no standing in a court of equity, and this occupancy, under an equitable title, will defeat the operation of the statute of limitations. Even if he enters and holds under a void contract to purchase, this will characterize his possession, destroy its adverse quality, and render him simply a tenant at will. For the present we will content ourselves by showing that a possession thus held is not adverse, and hereafter demonstrate conclusively by the authorities that, if this equitable title had been pleaded and relied upon, it is utterly unavailable. In support of the proposition that a possession held under a contract to purchase, whether void or valid, could not be made the foundation for the acquisition of a title while thus held, under the statute of limitation, we should refrain from the citation of authorities but for the position assumed by counsel for respondents. See Adams on Ejectment (4th ed.), 558, 559. In the case of *La Frambois* v. *Jackson ex dem. Smith et al.* 8 Cow. 589, 605, Golden, Senator, said: "I admit, also, that if an adverse possession be claimed under a grant or conveyance which never could have been the foundation of a good title, it cannot bar the recovery of one who shows a perfect title." Here the purchase money was not paid even under this version of the case. See Adams on Ejectment, 575 (4th ed.).

The color and claim of title must be a legal claim, and not an equitable claim, which was the only one ever asserted by the deceased. Such a claim is not adverse, and does not set the statute in motion. *Potter* v. *Sesson*, 2 Johns. Cas. 324; *Smith* v. *Pierce*, 2 Johns. 221; id. 84; 3 id. 422, 423; 8 id. 380; especially Adams on Ejectment (4th ed.), 575, and *Van Allen* v. *Rogers*, 1 Johns. Cas. 33.

When the proper distinction is made between cases

where a party claims absolutely under color of title, however defective, and under the owner upon a contract depending upon a contingency or condition precedent, which is the case at bar, there is no difficulty in reaching a correct conclusion. The following authorities are directly in point, and must forever settle the only remaining question legitimately in this case. See Angell on Limitations (4th ed.), p. 409, sec. 406; *Woods* v. *Bliss*, 11 Ohio, 455; *Brown* v. *King*, 5 Metc. (Mass.) 173.

Mr. Angell, in his work upon limitations (sec. 406, *supra*), in discussing this question, says: "But the case is different when one agrees to buy and another agrees to sell land, and no consideration is paid, and the party contracting to buy enters into possession, inasmuch as the fair inference there is that the entry and possession are in subordination to the title of the party contracting to sell until the stipulated payment is made; such a case therefore constitutes a tenancy at will." *Ball* v. *Cullemore*, 2 Cromp. M. & R. 120; *Doe* v. *Chamberlain*, 5 M. & W. 14; *Larnard* v. *Hudson*, 60 N. Y. 102; *In re Dept. of Pub. Parks*, 73 N. Y. 560.

All the witnesses concurred upon the one proposition that deceased acknowledged the title of the plaintiff, and only contemplated acquiring it by the construction of the wall referred to. And this is established as an undisputed fact in the case. He cannot, therefore, during the existence of this condition of affairs, be permitted to claim under the statute of limitations. Bigelow on Estoppel, p. 384; also p. 383 and note 2.

But, as we have said before, the oral contract set up in the replication, upon which there was proof, was deemed denied under sec. 239 and sec. 241, Revised Statutes of Montana. This put directly in issue the adverse possession of defendants and their predecessors in interest, and the question should have been left to the jury. See Angell on Limitations, 389, *supra;* Tyler on Ejectment, pp. 878, 879. See, also, 3 McLean, 457.

While we confidently assert and earnestly insist that the foregoing authorities conclusively settle this case in favor of appellants, we shall attempt to show the utter emptiness of the position of respondents had the oral contract proven been properly pleaded and relied upon.

Notwithstanding this contract is set up in the replication as a negative reply to the statute of limitation pleaded by defendants as their only defense, aside from the denial of plaintiff's legal title, the plaintiff can insist upon it for that purpose without being obnoxious as a departure, for the reason that it goes to fortify the original title alleged by the plaintiff in his complaint. However repugnant to every principle of pleadings, and subversive of our boldest conceptions of justice, it would be to admit defendants to avail themselves of the oral contract so set up, for the sole purpose mentioned, which is even deemed denied by them and not sought to be enforced by either, we must respectfully submit that it is wanting in every essential quality that would give it any standing in a court of equity.

Treating this contract, for the purposes of this argument, as a written and valid one, how, then, does the case stand? The deceased, at the time of the contract, was in possession as a tenant of plaintiff's grantor. No possession was, consequently, given or taken under the contract; no purchase money was paid, and the only condition upon which the deceased was to have a title was upon the construction of a certain brick wall. The legal title was to, and did, remain in plaintiff; the condition precedent upon which alone he was to be divested of this title never did occur. The plaintiff, while the deceased was thus in default, brings his action of ejectment. Even admitting, then, the validity of this contract, that it was properly pleaded, are defendants in a situation to enforce it? Being thus in default, we say not, and cite the court to the following authorities upon this point: The obligation to convey was at an end when deceased

made default in erecting, or assisting in erecting, this
wall. It was not a condition to be satisfied in money.
The parties have made their own contract, for reasons
best known to themselves, and have made the construc-
tion of the wall the condition upon which alone the title
was to pass. This court cannot satisfy this condition by
the substitution of another and different one. It is time
to specifically enforce such contracts when the party
asking it has fully complied with its terms on his part,
and his adversary is in default. Here he has not com-
plied, and his adversary is not in default. It would be
only to assume that plaintiff was not bound to convey,
and yet could not recover; that he was bound by a con-
tract, so far as he was concerned, that had been ignored
by deceased and could not be enforced. He is entitled to
recover in ejectment, even if this contract as proven was
in writing, as required by our statute of frauds; and
upon this proposition we cite the following authorities:
Tyler on Ejectment, p. 40; 47 Barb. 163; 3 id. 576; 7 id.
74; 34 id. 352; 21 Wend. 230; 1 id. 418; 7 Cow. 747; 6
Wend. 228.

The defendants, in so far as this contract is concerned,
become actors, or should be such, to avail themselves of
it. They should have pleaded it as affirmative matter in-
stead of denying it. Treating the proposition, however,
as if they had so pleaded it, and what is their attitude in
this case? They come into court and say, I made a con-
tract with plaintiff by which I was to have a title to cer-
tain property upon building a certain wall. I have not
built it, and here assert a title I was to have but never got.
I ask the enforcement or benefit of the contract, notwith-
standing that I am in default. The only thing that I ob-
ligated myself to do I have not done. I ask the court,
according to my conceptions of equity, to treat that
which I should have done as being done, that I may com-
pel my adversary to do that which he is otherwise under
no legal or moral obligation to do. Viewing this ques-

tion in its proper light as an oral contract, and how does it stand?

1st. It is void under our statute of frauds. See Revised Statutes of Montana, p. 435, sec. 160.

2d. There was no such part performance as in equity would take it out of the statute, even if it had been pleaded and relied upon. First, because the only single act of performance to be done or complied with on the part of deceased was the construction of the wall referred to, which was not done, attempted to be done, or any excuse offered whatever for such total failure. The presumptions are that he intended the legitimate consequences of his act, and was unwilling to construct it for the property he was to get, upon that sole contingency. In fact no reason is assigned, unless, forsooth, it may be inferred that he was financially unable to comply, which is no valid excuse in law or equity. Second, because he was in possession as tenant at the time of this oral contract, and no possession was delivered in pursuance of any of the terms of the contract. Third, even the possession thus held can by no means be construed as a delivery under the contract (as no reference is made to it in the contract proven); no consideration or any part of it was done or performed which, under all the authorities, was necessary to take the cause out of the statute. See Browne on Statute of Frauds (4th ed.), sec. 477; also sec. 472; *Jones* v. *Peter*, 3 Serg. & R. 543; Sugden on Vendors and Purchasers, 141; *Eckhart* v. *Eckhart*, 3 Penn. 332; 27 Penn. 176.

But it is claimed that the deceased tore down one house and erected another upon the premises. This might have given him an equitable right to have performed or offered to perform the verbal condition on his part, but did not relieve him from so doing.

It must appear that in good faith, and at the proper time, he has performed the obligations which devolved upon him in order to take the case out of the statute of

frauds. *Beckwith* v. *Kounts,* 6 B. Mon. (Ky.) 222; *Garnet* v. *Macon,* 6 Cal. 308.

A verbal contract within the statute of frauds is void, whether sought to be enforced by action or made available as a defense. Browne on Statute of Frauds (4th ed.), secs. 122, 131, 136.

He had possession of the property for years. In such case his improvements, under our statute and the authorities, are unavailing except as an offset for use and occupation. See *Wack* v. *Sorber,* 2 Whart. 387. There might be some reason in the position that the improvements gave a claim (if it can be said there were any such, the comparative value of the houses not being shown), if plaintiff had practiced a wrong or fraud in the premises, but as it is, deceased was at liberty to comply, if he saw proper to do so, and get his title. It is sufficient to say that all we know of such improvements was the loose remark of the defendant Dodson, dropped during the trial of the case, while upon the stand as a witness.

As to this kind of an equity, which comes more properly under the head of an *estoppel in pais,* it must be alleged and proven, first, that he was induced to make them on account of the contract, but for which it would not have been done; and second, that it would be a fraud upon his rights not to permit him to avail himself of them. As to the first proposition, there is no pleading and evidence to support it; and upon the second it is fair to say he could have constructed the wall and acquired his title, but did not; he is in default, and is the factor of his own situation. Strange, indeed, that he could claim that there would be any fraud upon his rights under such circumstances. He could recover their value if made in good faith, or set off the same against the use of the property. See Browne on Statute of Frauds (4th ed.), sec. 122 *et seq.* This, it must be assumed, he intended should be the result, otherwise he would have performed or offered to perform the condition precedent on his part.

Hilliard on Vendors, vol. 2, p. 312.   Especially see *Denni-son* v. *Coquillard*, 5 McLean, 253.

It is, however, also claimed by respondents' counsel that we should have presented and proven up our claim against the estate before he was entitled to maintain an action for the possession of this property, and argues that, by reason of the failure to aver these facts, the complaint does not state facts sufficient to constitute a cause of action.   From the many absurd propositions contained in respondents' brief, when applied to the pleadings and facts in this case, we cannot say that we are surprised that his counsel has fallen into so plain and palpable an error as this.   In support of this position he cites us to sections 157 and 268, Probate Practice Act, which reads as follows: "No holder of any claim against an estate shall maintain any action thereon unless the claim is first presented to the executor." He fails to refer to the other sections of the statute applicable to these claims, and which must be construed in connection with the section above quoted.   One of these provisions reads as follows: "Sec. 151. Every claim which is due when presented to the administrator must be supported by the affidavit of the claimant, or some one on his behalf, that the amount is justly due, and that no payments have been made thereon which are not credited, and that there are no set-offs to the same to the knowledge of claimant or affiant." This and similar provisions of the statute, aside from the potent and overwhelming reasons for it, show conclusively that the claim referred to has reference to a money demand, and has no application whatever to an action for the possession of real property.   In this connection we are also referred to the case of *Hentsch* v. *Porter*, 10 Cal. 559, 560.   By an examination of this case it will be seen that it fully sustains the position we have taken.   The claim in question was a money demand.   The statute referred to has a similar provision to our own in so far as the affidavit to

the claim is concerned. The only question is, does it refer to an action of ejectment or to a money demand? Bennett, Judge, in delivering the opinion of the court, says: "The claimant must present his claim properly verified, that the administrator and probate judge may determine whether they will allow or reject the claim. If the claimant does not thus present his claim, he cannot maintain an action thereon against the administrator." Under these provisions of the code and this decision, no one could doubt that a money demand should be presented, and that a failure to do so, with the proper affidavit appended, would be fatal to his action in the district court. But upon principle, the authority cited and the statute referred to, we deny its applicability to the case at bar. We are utterly at a loss, from the record in this case, to know upon what proposition the court instructed the jury to find for the defendants. As the plaintiff, however, has sustained his title in every respect by pleadings and proof, we are led to believe that this is the only ground upon which it rested, and have consequently given it more consideration than we otherwise would have done. The complaint states all that is necessary in an action of ejectment. The instruction of the court to find a verdict in this way, without an intimation upon what grounds it is done, is a practice to which we cannot subscribe. Judges are not infallible, and may leave skilled attorneys groping in darkness in an unsuccessful effort to find some reason or grounds for such a ruling, and ultimately leave the rights of his client enveloped in the silence and mystery of eternal night. If there had been a motion for non-suit, the grounds upon which it was based should be specifically stated and all others would have been waived. This principle is equally applicable when the court assumes to direct the jury in whose favor to render a verdict. See *Brown* v. *Warner et al.* 16 Nev. 228 *et seq.*

Again, we are told by counsel for respondents that the

administrator of this estate is entitled to the possession of this property until the estate is finally settled up and an order of distribution is had, and that the action of ejectment in this case is consequently premature. To support this position, he cites the court to section 127, Probate Practice Act; *Meeks* v. *Kerby*, 47 Cal. 167, and *Chapman* v. *Hollister*, 42 Cal. 462. Were we not from long and familiar acquaintance with counsel convinced of his fidelity to the court in which he practices, we should certainly question his sincerity in assuming that the section of the statute and authorities cited have any bearing whatever upon the questions involved in this case. The provision of the statute referred to reads as follows: "Sec. 127. The executor or administrator is entitled to the possession of the real and personal estate of the decedent, and to receive the rents and profits of the real estate until the estate is settled or until delivered over by order of the probate court to the heirs or devisees, and must keep in good tenantable repair all houses, buildings and fixtures thereon which are under his control."

It is too plain to admit of any doubt that this section applies to property belonging to the estate of the decedent and not to property of a third person which he may have in his possession at the time of his decease. It cannot well be seriously contended that the legislative assembly intended that the executor or administrator should wrongfully hold and repair the property of a stranger during the course of administration. Such is not the language or intent of the law. It refers to the estate of the decedent and none other.

In actions involving the right of possession to real property, the administrator under this section may properly defend, because the right of possession of this class of property is vested in him. The action of ejectment must be brought against the party in possession, regardless of the character or right under which he holds. It affords a remedy to the owner and a protection to the

administrator and the estate. It gives the owner a protection to his rights and at the same time relieves the estate from the expenditure of money upon property that does not belong to it. The authorities fully bear out this position. The cases then determined were between the heirs and devisees of the decedent, who were not entitled to possession of the property (which was conceded to belong to the estate) until the estate was wound up. But we confidently insist that this section of the statute likewise has no application to the case at bar.

Authorities are also cited to show that the plaintiff must be entitled to the possession of the property to maintain ejectment. It is a possessory action, and no one doubts the soundness of this doctrine. When, however, in ejectment, plaintiff shows a strict legal title, it draws with it the right of possession, and, upon a failure upon the part of defendant to plead and show some equitable title or right in himself, this legal title will prevail. This proposition is sustained by the authorities we have cited, and is too plain and elementary to require reference to others. The defendants have failed to plead and show any valid right whatever to the property, and the plaintiff should have recovered upon the strength of his legal title and the right of possession that necessarily followed it.

It is also claimed by respondents that in an action of ejectment, when the answer is a general denial, the defendant may show any defense that will defeat a recovery; and *Semple* v. *Cook*, 50 Cal. 26, is cited as an authority to sustain this position. We have shown in the outset that this denial is applicable to the legal title and legal defenses, and has no reference whatever to equitable titles and equitable defenses; that equitable defenses, to be available, must be pleaded; and such is the effect of the authority cited, as disclosed by the facts and opinion in the case. This leaves the issue, as we have left it in the fore part of this brief, dependent upon defendants'

rights by adverse possession, which we have shown exist only in the imagination of counsel.

It is also asserted that plaintiff cannot recover upon the equitable title set up in his replication, but must prevail, if at all, upon the legal title set up in his complaint. This is undoubtedly true; but that he seeks to so recover is utterly without foundation. It was pleaded as new matter, as a negative defense to the statute of limitation pleaded by defendants in their answer, to rebut the allegation that their possession was adverse, and thereby enable plaintiff to recover upon the legal title alleged in his complaint. It would be an anomaly in practice if a defendant could set up new matter in his answer required to be met by plaintiff in his reply, and yet that he could not so meet it without subjecting his pleading to the infirmities of a departure.

This suggestion of counsel leads us to examine into the true situation of this case and the inextricable dilemma in which these pleadings place him. It is too clear that the proof has failed to sustain their plea of adverse possession, leaving the plaintiff's legal title to prevail. Besides, if there was anything in it, it is too late after verdict, and not the proper way to take advantage of it. See 1 Van Santvoord's Pleadings, 635 *et seq.*

There is nothing left upon which they can base a recovery except upon the verbal contract set up by plaintiff in his replication solely as a negative defense to this plea of adverse possession, which under the statute is deemed to be denied by the defendants. Would it not be a remarkable epoch in the history of pleadings when a defendant who denies the existence of a contract, whereby he is estopped, whatever the evidence may be, is permitted to recover upon an equitable defense set up in the replication of the plaintiff to negative the claim of adverse possession?

How could defendants meet this issue? To avoid the denial created by the statute he would have to come in

and admit it, and ask the benefit of such allegation, and hypothecate his right upon a pleading unknown to and not recognized by our system of practice. This, it is clear, could not be done. They are forced to stand or fall upon the decisions cited in the former part of this brief,— that the defendant, to avail himself of an equitable defense, must plead and prove it. There is no dodging this proposition. If there was any way by which defendants could use the pleading and proof of this oral contract, it would show that they had no claim under the statute of limitation, as we have demonstrated by the authorities, and that they, and not defendant, were in default, and were consequently without any remedy to enforce this verbal contract. And it is a universal rule in cases like the present, that when a contract is not capable of being enforced by specific performance for want of equity, or by reason of its own infirmity, it is also not available as a defense. *Finch* v. *Finch*, 10 Ohio St. 507, 508; *Comes* v. *Lamson*, 16 Conn. 246; Browne on Statute of Frauds (4th ed.), sec. 131 *et seq.*

Counsel for respondents seem as much at a loss as ourselves as to the grounds upon which the court, under the pleadings and proof in this case, directed the jury to find for defendants. Claiming that the tearing down of one building and the erection of another in its stead gave defendants' predecessor in interest a right to disregard the contract and yet insist upon its fulfilment, to which we have heretofore referred, they also insist that this act constituted an adverse possession. The authorities we have cited are unequivocally to the effect that it, the *quo animo*, determines whether or not the possession is adverse, and that if the property was held under a contract to purchase, it could not be so construed. Besides, all the proof shows that deceased claimed no right whatever to the property in dispute except upon complying with the only condition upon his part in the construction of the wall. All the evidence points to this fact, and if there could

have been any question about it, it should have been left
to the jury.

There is but one other proposition in this case, which
is barely mentioned in the brief of counsel for respond-
ents. It is intimated that if plaintiff has any claim, it is
for money laid out and expended for the use of deceased,
which, if true, as we have seen, should have been pre-
sented and proven up against the estate. It will be ob-
served at once that this depends solely upon the validity
of the oral contract referred to. It is true that under
certain circumstances a party may perform all the obli-
gations on his part, and thus acquire such an equity as
would enable him in a court of chancery to rely upon
and enforce the contract which at law was invalid. It is
the first time, however, we have heard the doctrine ad-
vanced that the party to a void contract could per-
form the obligation of the other contracting party, and
thereby give it validity and enforce it against him; and
yet this is exactly what is asked of appellant in this case.
Respondent insists that under an oral contract to pur-
chase this land, and acquire a title upon the performance
of a single condition precedent (not involving the bare
payment of money), but serves in a particular capacity
and in reference to a particular matter, that the appel-
lant could have it performed for him, and enforce a con-
tract that would under the statute of frauds otherwise
be void. This position, if sustained, would subvert the
whole theory upon which these statutes rest, open up
at once the gates to fraud and perjury, and render the
title to this character of property, which it was intended
to fortify, loose, uncertain and insecure.

But, above all, suppose appellant should have presented
this claim with the affidavit, as required by the statute;
what then might have been the result? He could not
enforce it. The contract was void as to both parties, and
either could avail himself of its infirmities. The ad-
ministrator might well say, there was no express promise

or request made of you to do this work, and all the implication is to the contrary. If the deceased had intended you should have built this wall, he would have in some way signified such intention. On the contrary, he was only to have a title to this land upon the construction of this wall, which he could have done or not, at his option. He chose not to erect it, and the presumptions are that he did not intend it should have been done; there is, consequently, no implied promise to pay you for it. Deceased was in possession as a tenant when this naked verbal contract was made; hence there was no delivery of possession in accordance with that contract. It is referable, therefore, to the tenancy and not the contract. See Browne on Statute of Frauds (4th ed.), sec. 477, and authorities cited in note; also sections 131, 134, 136; *Davis v. Farr*, 26 Vt. 592; *Pierpont v. Brainard*, 5 Barb. (N. Y.) 364.

There being no actual delivery of possession under the contract, or by any of its terms, and no consideration paid, it was void under the statute of frauds. The deceased refused to erect this wall, which at his option he might have done and obtained a title to the property in dispute. He was under no legal obligation to do so. You have voluntarily taken upon yourself to build it, and there is consequently no express or implied promise to pay you for it. This would be a complete answer to such a claim. It demonstrates conclusively the want of mutuality or binding force of the contract, and forcibly suggests the patent fact that plaintiff has pursued his only available remedy, and ought to recover.

The fact that counsel for respondent have presented many propositions by their lengthy brief in this case, which can have no bearing on it, has occasioned an examination of the pleadings, trial and evidence to a much greater extent than we otherwise should have done. Seeing a possibility of the court being misled by statements of abstract propositions of law by counsel, and believing

that there was error in the rulings of the court below by
which the property of one person has been wrongfully
appropriated to another, and realizing the disastrous con-
sequences to all the parties in interest which would result
from a protracted litigation, we have felt it our duty to
relieve the court as much as possible of this labor, and
demonstrated to the best of our ability the utter inappli-
cability of these authorities when considered in connec-
tion with the record in this case, as well as the fallacy of
the defense interposed, at the expense even of exposing
ourselves to the imputation of being tedious and prolix.

GALBRAITH, J.  The complaint in this action alleges:
title in the appellant to the piece of ground in controversy
from and after the 6th day of October, 1871; a wrong-
ful and unlawful possession of the same by the respond-
ents since the 9th day of June, 1881; that, on the 9th day
of June, 1881, appellant demanded the possession thereof
of the said Dodson, which was, and still is, refused; that
since about the 20th day of June, 1881, the respondent
Nevitt, in conjunction with Dodson, has been in the
wrongful and unlawful possession of the premises; and
that, on the 24th day of August, 1881, the appellant de-
manded possession of Nevitt also, which was, and still is,
by him refused; that respondents still continue to with-
hold the possession of the premises from the appellant.

There were separate answers by the respondents, each
answer denying specifically each of the above allegations
of the complaint, except that of the demand of the pos-
session of the premises, and the refusal thereof by each
of the respondents.  And they allege affirmatively that
respondent Dodson, as the duly appointed and qualified
executor of the last will and testament of Thomas B.
Warfield, who died on or about the 13th day of February,
1881, took possession and charge of the above premises
as a part of the property of the estate of said Warfield,
deceased, and has continued to control and manage the

same as such executor, and that he has no other interest of any kind whatever in the premises; that Thomas B. Warfield, in his life-time, and respondent Dodson, as executor, etc., have been in the open, notorious and uninterrupted adverse possession of the premises for five years immediately preceding the bringing of this action; and that the right of action of the appellant is barred by the statute of limitations. The answer of Nevitt specifically denies the allegations of the complaint, and avers that, since the 20th of June, 1881, he has been in possession of the premises only as the tenant of respondent Dodson, acting executor, etc., of Thomas B. Warfield, deceased.

The replication, replying to answer of Dodson, denies that he took possession or charge of the premises as part of the estate of Thomas B. Warfield, deceased, or continues to control or manage the same as such executor; and also denies that the right of action is barred by the statute of limitations.

The appellant alleges affirmatively that in May, 1872, the said Warfield entered into a parol contract with appellant for the purchase of the premises, by which he agreed to build a brick wall for appellant, whenever demanded by him, upon and along the western boundary line of the premises, sufficient to serve " for the eastern wall of a building which appellant then intended to erect, and did subsequently erect," upon the adjoining premises on the west; and that no right or title should accrue to the said premises to the said Warfield until the performance of this agreement by him; in consideration whereof the appellant agreed that, upon the performance by Warfield of his promise, the appellant would sell and convey to him the premises in controversy; that Warfield occupied the premises by virtue of this agreement, and not otherwise; that in April, 1880, and at other times thereafter, appellant demanded of Warfield the performance of his part of the agreement, which Warfield never fulfilled.

The transcript contains a full statement of the evidence, which establishes the following facts: That the appellant obtained the title in fee simple to the premises in controversy on the 6th day of October, 1871, at and prior to the purchase of the property by the appellant. Warfield had been the tenant of the premises to Tracy, who was the appellant's grantor. That Warfield admitted to a witness demanding rent of him, as the attorney of Tracy, for a house which then stood on the premises and was occupied by Warfield (the witness thinks in 1872), "that he would pay no rent to Tracy, and that Lamme was the person to whom he was to pay rent;" "that he was not obliged to pay rent for that year to Tracy, but to Lamme." That there was a parol agreement between the appellant and Warfield that he, Warfield, would erect a brick wall for the appellant on the west side of the premises in controversy, upon the completion of which the appellant was to sell him the premises and make him a conveyance for the same. That about the year 1880 the appellant demanded of Warfield the fulfilment of the above agreement. That Warfield never fulfilled the agreement with appellant, nor performed any part thereof. That Dodson is the duly appointed and qualified executor of the last will and testament of Thomas B. Warfield. That appellant has presented no claim or demand against the estate of said Warfield to the executor. That in 1872 the said Warfield tore down and removed the building then on the premises, which had been thereon in 1871, and erected another house on the ground. That Warfield remained in possession of the premises until his death, viz., February 13, 1881. That said executor, as such, took possession of the premises and rented the same to Nevitt. That the premises were appraised as a part of the property of the estate of Thomas B. Warfield, on January 24, 1881, and are mentioned in an inventory of the estate.

After hearing the testimony, the court, on its own

motion, instructed the jury to find a verdict in favor of the respondent. The jury returned a verdict for respondent accordingly, and judgment was rendered thereon.

We will consider first the reasons urged by the respondents to sustain this action of the court. It is claimed that "the plaintiff in ejectment must show a right to the possession of the property, and proof of the legal title is not sufficient." The cases cited by the respondents do not maintain this position. It is a fundamental principle of the law in relation to real estate, that "when there is no adverse holding, the possession follows the property in the land, and is in him who has the title." Washburn on Real Prop. vol. 3, p. 118, citing *Holly* v. *Hawley*, 39 Vermont. The law of this territory provides that "in every action for the recovery of real property, or the possession thereof, the person establishing a legal title to property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by any other person is deemed to have been under, and in subordination to, the legal title, unless it appears that the property has been held and possessed adversely to such legal title for five years before the commencement of the action." The true principle, therefore, is that he who has the legal title to real property is presumed to have the right to the possession thereof until better right is shown.

It is claimed by the respondent that the action of the appellant was brought prematurely for the reason that, having commenced no action against Warfield, the executor, Dodson, had obtained possession of the property under the laws of the territory, and was entitled to continue in such possession until the estate was settled, referring to section 127 of the Probate Practice Act. But to assert that the premises in controversy are a part of the estate of Warfield, deceased, is itself begging the question at issue. The mere fact that an executor claims that property as a part of decedent's estate, and includes it in

his inventory of such estate, does not make it so in fact. The appellant alleges this property to be his own, and therefore that it is not any part of the property of the estate of Warfield. To say that property, by being mentioned in the inventory of a decedent's estate taken possession of by an executor, and claimed as part thereof by him, is thereby conclusively presumed to be a part of such estate until the same is settled by an executor or administrator, would be productive of serious mischief, and we will not place such a construction upon this section of the probate act.

The cases referred to by respondents to maintain the position (*Meeks* v. *Kirby*, 47 Cal. 168, and *Chapman* v. *Hollister*, 42 Cal. 462) are only to the effect that an heir or devisee, or their grantees, are not entitled to the possession of their share of the decedent's estate, and cannot maintain ejectment therefor until the administration of the estate is closed, and were rendered in view of the same or similar provisions of the Probate Practice Act of that state. The reasons are evident; for in addition to the express provisions of the statute, to permit the heirs or devisees to take possession of the estate before its settlement, "would tend to confusion, delay and embarrassment in the administration." But we think that neither the law itself, nor the reasons above given, apply to a case where the claim is by one not bearing such a relation to the estate, and who claims the property as his own, and impliedly denies that it is part of decedent's estate. The respondents argue that it was necessary for appellant to aver and prove that he had presented a claim for the premises to the executor in order to maintain his action, by reason of the provisions of the law, "that no holder of any claim against an estate shall maintain any action thereon unless the claim is first presented to the executor." Sec. 167, Probate Practice Act, Rev. Stat. And the kind of claim intended by this provision is doubtless one which exists by reason of the

holder of such claim being a creditor of the estate. The entire article of which this chapter is part, "Article 1, chapter 6, of the Probate Practice Act," treats of this class of claims, and it is a claim of this character arising upon a contract express or implied, and not a claim of title to real estate, which is intended by this provision.

The respondents attempt to maintain that as the appellant "in his complaint relies wholly upon his legal title," he cannot rely upon an equitable title set forth in his replication. What relation the allegation contained in the replication, and evidence thereof, bear to the case, we will consider hereafter.

The complaint states a good cause of action by averring the legal title to be in himself, the appellant. The answer denies the legal title, and sets up the statute of limitations. The replication denies the affirmative allegations of the answer, and alleges the parol agreement affirmatively, in reply to the new matter set up in the answer. This is intended to be matter in avoidance, and is deemed "controverted on the trial by the adverse party." Sections 107 and 239 of the Code of Civil Procedure, R. S. pp. 59–83. The parol agreement set forth in the replication is made in reply to the claim of the statute of limitations, contained in the answer. It is intended to rebut the allegation of the answer, that the possession of the respondents was adverse. It is deemed to be denied without further pleading. The appellant by setting up this matter does not assume to rely upon this allegation, or abandon his claim to recover upon the legal title. Such matter, set forth in a replication rendered necessary by the answer, is not a departure in pleading. It is claimed by respondents that "if in ejectment the answer is a general denial, the defendant may prove any fact tending to show that plaintiff had no right of action when the action was commenced," and that it was not necessary for Dodson to set up the character of the possession by Warfield under Lamme. As a legal proposition this is

true in relation to any facts which respondents might have offered to prove, tending to disprove the legal title of the appellant, or tending to establish a better legal title in themselves. But the respondents did not allege any equitable defense, relying wholly upon their denial of the legal title of the appellant and the statute of limitations, and therefore could not offer proof tending to establish an equitable defense upon the trial. The rule is well established and recognized by the decisions of this court, that if a defendant desires to avail himself of his equitable title, he should plead it and ask the appropriate relief. When he has not done so, he is not entitled to give it in evidence. *Kenyon* v. *Quinn,* 41 Cal. 325; *Cadiz* v. *Major,* 33 Cal. 288; *Reece* v. *Roush,* 2 Mont. 590.

The respondents contend that, "after the failure of Warfield to pay for the wall referred to, and after a demand therefor, Lamme had a claim for the cost of the building of such wall against Warfield, and Dodson as such executor, and should have prosecuted the same for payment." The allegations may be briefly stated thus: A legal title alleged in the complaint, which is denied in the answer, and the statute of limitations averred by reason of an adverse possession which has its inception from a parol agreement not alleged in the answer, but only in the replication, and which the law presumes the respondents to deny.

We do not think that in this case, in this condition of the pleadings, the respondents can claim that the appellant should be required to recognize an agreement which they do not allege in the answer, and which they are presumed to deny. We will consider this claim further on in this opinion.

It is claimed by respondents that "the removal of the log house by Warfield, and the erection of a building by Warfield on the land, constitutes under the circumstances an adverse possession within the meaning of the statutes of this territory."

The circumstances of the case cited to maintain this position, viz., *Nat. Mining Co.* v. *Power*, 3 Mont. 344, are in no wise similar to the circumstances of the case at bar. In that case the person claiming title by adverse possession had purchased from a stranger a dwelling-house and other buildings which were upon the land of the plaintiff, and inclosed the buildings with a good and substantial fence, and resided on the tract thus inclosed for about four years. Under the laws of the territory at that time, three years' adverse possession established a title. The plaintiff's legal title was obtained in 1869. It was established on the trial that the defendant always claimed to be the owner of the property, and that the agent of the plaintiff did not know that she made this claim, although he knew that she built the fence and occupied the premises for the above period. It will be observed that the possession of the defendant had no connection with plaintiff's title and was hostile in its origin, continuing to be so during the entire above-named period. In the case at bar, even granting that the parol agreement had been properly alleged and proved by Warfield, yet his possession was not hostile in its inception, for he was the tenant of appellant when the latter obtained the legal title, and by the parol agreement he recognized the appellant's title, and must necessarily have claimed under it and not in hostility thereto. The evidence does not disclose whether or not Warfield removed the house and built another, before or after the parol agreement, or with or without the consent of the appellant. The circumstances of the case repel the presumption that these acts of Warfield were done in view of asserting or holding adverse possession of the premises. The question of adverse possession is one of intention. The intention must be discovered from all the circumstances of the case. This brings us to the question as to whether or not the possession of Warfield was adverse. The parol agreement was void under the statute of frauds

unless there was such a delivery of possession, or part performance, as took it out of the statute. There was no such delivery of possession in this case. Warfield was in possession of the premises when the parol agreement was made, and there was no delivery to or assumption of possession by Warfield under the agreement. Browne on the Statute of Frauds, under the head of "Verbal contracts enforced in equity," sections 472, 476, 477, contains the following language: "In all cases in which possession, either as delivered by the vendor or as assumed by the purchaser, is relied upon, it must appear to be a notorious and exclusive possession of the land claimed and to have been delivered or assumed in pursuance of the contract alleged." "The possession must appear to have been delivered or assumed in pursuance of the contract alleged. Thus it is abundantly settled, that if one who is already in possession of land as tenant verbally contract with the owner for a new term, his merely continuing in possession after the making of the alleged contract is not an act of taking possession within the meaning of the rule so as to justify a decree for a lease according to the contract." "The same reasoning applies, of course, when the contract set up is the sale of the estate to the defendant by the owner of the fee. And in like manner, when the tenant's old term has expired and he holds over, such holding will not be decreed an act of part performance of an alleged contract for the purchase of the estate, but is more naturally referable to his landlord's permission to continue in possession upon the terms of the old holding."

In the case of *Jones* v. *Peterman,* 3 Serg. & R. 543, it was held that "possession had before a parol agreement of a lease for seven years, and continued afterwards, is of too doubtful a nature to be construed as part performance, and to take the case out of the act for the prevention of frauds and perjuries." In rendering the opinion, Tilghman, C. J., said: "A lessee who contin·

ues in possession after the expiration of his lease may be supposed to retain the possession by permission of the landlord. It would not be sufficient evidence of part performance of agreement to purchase the land, or of a new lease for more than a year." "In the present case, it is stated that Perkins, under whom defendants claim, was in possession prior to the agreement now sought to be established. Possession, therefore, was not delivered in pursuance of the agreement, and is not to be considered as part performance." Gibson, J., rendering an opinion in the same case, said: "It is fully settled that a bare holding over is not a possession under a new agreement to take a case out of the statute."

There was no part performance of the parol agreement which would take it out of the statute of frauds. It is perhaps needless to say that the evidence in relation to Warfield's having had estimates made of the cost of the wall is not a part performance of the parol agreement. The respondents do not claim anything in the argument by reason of the tearing down of the log building and erecting another, of which there is a bare mention in the testimony of Dodson, as witness for respondents, except as these acts tended to show adverse possession. They are not claimed as valuable improvements. There is no evidence which would show that they were of such a character, or that it would work a fraud upon the respondents, if the appellant failed to perform the agreement. Even if such had been proved to be the case, before equity would decree a specific performance of the contract on the ground of valuable improvements, Warfield or the respondents must first have performed, or offered to perform, their part of the agreement. The parol agreement was void under the statute of frauds. Sec. 160 of the General Laws, Rev. Stat. p. 435.

The agreement being void, even if properly averred and proved, was utterly powerless to set in motion the statute of limitations. Being in possession as tenant

when the appellant acquired the legal title, and having been the tenant also of the appellant, his possession after the parol agreement was not an adverse or hostile possession, for in such a case he will be presumed to retain possession by permission of his landlord. The evidence shows that Warfield admitted and recognized the title of the appellant, and expected to acquire it only by a compliance with the agreement.

"Where one entered in subservience to the title of the real owner there must be a clear, positive and continued disclaimer and disavowal of the title under which he entered and an assertion of an adverse right brought home to the owner, in order to lay a foundation for the operation of the statute of limitations." 3 Washburn on Real Property, sec. 23. But even granting that the agreement was a valid one and properly alleged and proved, still the possession was not adverse until the condition precedent was performed. The authorities upon this point are clear and conclusive. In *The Matter of the Department of Parks*, 73 N. Y. 560, Earl, J., says: "It is too well settled to be disputed that one who enters upon land under a mere agreement to purchase does not hold adversely as against the vendor until his agreement has been fully performed, so that he has become entitled to a conveyance."

Angell on Limitations, sec. 406, contains the following language: "But the case is different when one agrees to buy and another to sell land, and no consideration is paid, and the party contracting to buy enters into possession, inasmuch as the fair inference there is that the entry and possession are in subordination to the title of the party contracting to sell until the stipulated payment is made. Such a case, therefore, constitutes a tenancy at will."

In *Woods et al.* v. *Dille et al.* 11 Ohio, 455, it was held that "possession obtained under a contract of purchase does not become adverse while the contract is acted upon and payment made." There is stronger reason to sup-

port this proposition when the contract was not acted upon and no attempt made to comply therewith.

In *Brown* v. *King*, 5 Metcalf, 173, Wilde, J., said: "Where one agreed to buy and another to sell land, and no consideration was paid and no deed given, and the buyer entered into possession, the fair inference is that the entry and possession are not adverse and a disseizin, but by consent of the owner and in subordination to his title until payment is made and a deed given, and constitutes a tenancy at will."

Under the circumstances of this case, granting the contract to have been properly pleaded and a valid one, Warfield must be presumed to have held possession by permission of the appellant, and in such a case, "without the reservation of any rent, he is by implication of law a tenant at will." *Larned* v. *Hudson*, 60 N. Y. 102.

Therefore under any view of the case the possession of Warfield and the respondents was not adverse, and the allegation that the right of action is barred by the statute of limitations is not sustained. For the reason before given, that the respondents are presumed to deny the parol agreement, and also for the reason that the same is void, the appellant cannot maintain an action against the executor for the price of the wall. When an agreement is void, one of the parties cannot perform the obligation of the other, so as to render him liable therefor. This would be to give force and vitality to a contract which is absolutely void. It would be subversive of the entire theory of contracts, and void on the ground of fraud.

Under sections 239 and 241 of the Code of Civil Procedure (R. S. p. 83), the question of adverse possession should have been left to the jury under proper instructions.

The judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*