## ESTATE OF PETER G. PARTRIDGE, DECEASED.

[No. 3,308; decided August 26, 1886.]

Inventory.—An Administrator must Make a True Inventory and appraisement of all estate of the decedent coming to his possession or knowledge; and he is accountable with respect to this duty.

Inventory—Adverse Claim Against Property.—If any portion of a decedent's estate is the subject of an adverse claim, it is prudent on the part of the administrator to add a memorandum to the inventory, stating the asserted claim. But the property must be inventoried; the administrator cannot stand neutral because the decedent's title is disputed.

Inventory—Property Claimed Adversely to Estate.—An administrator cannot omit to inventory property said to belong to his intestate which is the subject of an adverse claim, on the pretense that he wants to stand neutral between the estate and the adverse claimant, leaving the merits of the controversy to the court's determination. The administrator cannot assume an attitude of neutrality; the statute points out his duty; and for the court to pass upon the merits of the adverse claim would be to assume a jurisdiction which, in probate, it cannot exercise.

Inventory—Disputed Title.—The Probate Court ought not, it seems, to reject an inventory of a decedent's estate, or order it modified, because it contains property, the title to which is disputed.

Inventory—Trying Questions of Title.—Where part of an inventoried estate of a decedent is in dispute, the adjudication of the title belongs to common-law tribunals; a probate court cannot conclude the question.

On September 28, 1885, Annie E. Partridge filed an affidavit and petition, the statements in each being the same, viz.: That she was interested in the estate as one of the distributees thereof; that decedent at time of his death owned and possessed certain bonds of the city of Sacramento, of the face value of $25,300 (with interest), and of the actual value of over fifty cents on the dollar; that upon information and belief, the said bonds have, since decedent's death, been in possession or under control of John Partridge, the agent of the administrator in the matters of the estate; that on September 14, 1885, she made demand on the administrator (Antoine Borel) to inventory said bonds as a part of said estate, "and the said Borel informed affiant that he would take no action, either for or against said estate, in the matter of said demand." That said bonds are not mentioned or included in the inventory of said estate on file. In response to a citation issued, the administrator made answer on October 6, 1885, setting forth substantially that the decedent left a will, which was duly admitted to probate, in and by which decedent's brother, Patrick M. Partridge, was made the sole legatee and devisee; that decedent left him surviving a son, Louis G. Partridge, of the age of majority, who was the husband of petitioner, Annie E. Partridge; that by reason of a claim of the invalidity of the will set up by the son, negotiations were entered into between the said son and the aforesaid devisee, which resulted in an agreement whereby the son withdrew his opposition to the will and consented to its probate, in consideration that the devisee should assign the son one-half of the decedent's estate; that the John Partridge mentioned in Annie E. Partridge's petition is the son of the devisee, Patrick M., and for many years prior to decedent's death was employed by him in his business matters; that in course of the negotiations between the said Louis G. and Patrick M., it became known that said John was in possession of the bonds referred to in Annie E. Partridge's petition,

and that he claimed to be the owner of them; also that he had a large claim against decedent for services performed; that therefore, to effect a settlement of all matters of controversy, it was agreed between John and Louis G. that upon the admission of the decedent's will to probate John should receive $1,500 from Louis G., and the latter should consent that the said bonds were and should be considered as the property of John and not of decedent's estate, and John should waive all claims against the decedent's estate, and against Louis G.

On October 17, 1885, the said administrator, Borel, filed an amended answer to the aforesaid petition of Annie E. Partridge, in which he set forth that the inventory of the decedent's estate returned and filed by him contained all the property of the estate coming to his knowledge or possession; that there was no other property except that returned in the inventory; a denial that decedent owned the bonds mentioned in the petition; or that the bonds had ever been in his (Borel's) possession, or under his control; or that John Partridge had been his agent as administrator or otherwise. Alleged, upon information and belief, that the bonds were never the property of decedent, and never formed part of his estate. The opinion below was delivered upon the hearing of the order to show cause made upon the petition, and the answers of the administrator.

T. Z. Blakeman, for applicant, A. E. Partridge.

E. S. Pillsbury, for John Partridge, claimant.

S. V. Smith, for A. Borel, administrator.

COFFEY, J. This is an application to compel the administrator to include in his inventory certain bonds—"Sacramento County Bonds"—alleged to belong to the estate of Peter G. Partridge, deceased. The administrator makes response that the reason of his omission was and is that John Partridge, nephew of deceased testator and son of Patrick M. Partridge, the sole devisee and legatee under the will of Peter G., asserted title to the lands, which title was recognized by the disinherited only son of deceased testator, Louis

Partridge, now deceased, whose surviving widow is the moving party in this proceeding. The agreement between Louis and John was in writing. There were only two persons interested in the subject matter at that time, Louis, the disinherited child, and Patrick M., resident in Canada, who was the universal devisee and legatee. Between these two a settlement was made outside of court, and without opposition the will was admitted to probate. Thereafter the controversy between Louis and John about the ownership of the bonds was apparently adjusted. In this hearing the administrator stood aside, as a "neutral" spectator, professing willingness to submit to any order the court might make, after taking testimony, as to the transaction between Louis and John. John Partridge then came in, represented by special counsel, and has undertaken to show that, inasmuch as he owned and owns the bonds in question, the administrator cannot be obliged to include them in the inventory. The administrator cannot assume an attitude of neutrality. He must, under the statute (Code Civ. Proc., sec. 1443 et seq.), make a true inventory and appraisement of all the estate which has come to his possession or knowledge, and he is accountable therefor. If any portion of the estate is claimed by others, it seems prudent to include this item in the list, with words or a memorandum stating the asserted claim: Schouler's Executors and Administrators, sec. 233.

Without reference in any manner to the character of the transaction between John Partridge and the deceased Louis, it is clear that the administrator should have included the disputed item in his inventory. The only reason why the decision has been deferred is that the court was desirous of placing the parties upon an equal footing in any litigation as to the title in another tribunal. After a full and anxious consideration of the whole matter, a consideration of the arguments and briefs and review of the testimony, I am convinced that the correct conclusion is that the administrator should inventory these bonds. Any other conclusion would, in my judgment, be equivalent to assuming a jurisdiction which this court sitting in probate may not exercise.

A court of probate ought not, it would appear, to reject an inventory, or order it modified, because it contains property, the title to which is disputed: for to common-law tribunals belongs the adjudication of the title, and the probate court cannot conclude the question: Schouler's Executors and Administrators, sec. 236; Gold's Case, Kirby (Conn.), 100 (see opinion on page 103).

Application granted.

---

When Doubt Arises as to Whether any Particular Piece or Article of Property should be inventoried as a part of the estate of a decedent, the court may institute an inquiry, and hear evidence to ascertain the ownership of such property; not for the purpose finally to determine the title, for that would exceed the jurisdiction of the probate court, but to determine, prima facie, whether the property belongs to the estate and should be inventoried. The investigation involves the bona fides of the claimants and the faithfulness to his trust of the executor or administrator; and the determination of these questions may serve as a basis for compelling him to inventory the property, or for removing him from office. But the adjudication of the court, or the recitals of the inventory, are not conclusive in another forum of the decedent's ownership, either as against third persons or against the executor or administrator: Estate of Rathgeb, 125 Cal. 302, 57 Pac. 1010; Lamme v. Dodson, 4 Mont. 560, 2 Pac. 298; Estate of Bolander, 38 Or. 493, 63 Pac. 689; Estate of Belt, 29 Wash. 535, 70 Pac. 74. The valuations given in the inventory are not conclusive for any purpose: Estate of Hinckley, 58 Cal. 457, 516; Estate of Simmons, 43 Cal. 543.