## CRARY *v.* GOODMAN.

To make the possession of land adverse so as to avoid a deed thereof under the statute against champerty (1 R. S., 739, § 147), such possession must be under the claim of some specific title. A general assertion of ownership, irrespective of any particular title, is insufficient.

Accordingly, where a party occupies 130 acres, having a title to 100 only but supposing the entire tract so occupied to include but 100 acres, his possession is not adverse so as to render a grant by the true owner champertous.

Otherwise, it seems, in respect to adverse possession for the purposes of the statute of limitations.

APPEAL from the Supreme Court. Action to recover the possession of land. The trial was before a referee, who found

these facts: Lot No. 14, of which the premises in dispute are a part, contained in point of fact two hundred and sixty acres, but according to the survey of the Holland Land Company, the original proprietor, contained only two hundred and thirty acres. The fact, however, was not discovered until 1847, after the conveyances under which both the parties claimed. The eastern one hundred and thirty acres of the lot had been surveyed and laid out. One Chase, who had a contract for the purchase thereof, assigned it to a party to whose rights the plaintiff succeeded. Subsequent to this assignment, and in 1820, Chase was in possession of the remainder of the lot, with an equitable title to a conveyance. He occupied and improved one hundred and thirty acres supposing it to be but one hundred. In 1828 he assigned his interest to one Kenyon, who entered into a written contract with the Holland Land Company, for the conveyance to him of the west one hundred acres, in which the premises were described by metes and bounds so as to exclude the thirty acres, which were as yet an unascertained surplus, and are the subject of this action. He continued the occupation of the whole one hundred and thirty acres, and to his rights one Huntley succeeded by assignment of his contract, and a deed, in 1838, conforming thereto, from the Farmers' Loan and Trust Company, which had acquired the title of the Holland Land Company. The defendant claimed under Huntley.

In 1845 the Farmers' Loan and Trust Company conveyed to the plaintiff the east part of lot No. 14, describing it as " one hundred and thirty acres more or less," but bounding it on the west by the land deeded to Huntley, and thus including the premises in dispute. The defendant insisted that his possession of the thirty acres rendered this deed void as to them. Judgment was entered, on the referee's report, for the plaintiff, which having been reversed on appeal, at a general term in the seventh district, the plaintiff appealed to this court. The cause was submitted on printed arguments.

*David H. Bolles,* for the appellant.

*A. G. Rice,* for the respondent.

SELDEN, J.   The premises in dispute are a part of lot No. 14, township 3, range 6, of the lands formerly belonging to the Holland Land Company in the county of Cattaraugus. Both parties claimed under the Farmers' Loan and Trust Company, the deed under which the defendant claimed having been executed by said company to Daniel Huntley, in November, 1838, and that under which the plaintiff claimed by the same grantors to the plaintiff himself, in October, 1845.   The deed to Huntley conveyed the west part of the lot, and the premises described were bounded on the west by the west line of the lot, and on the east by a line parallel to the west line, and at a given distance therefrom.   These boundaries did not include the land in dispute; but Huntley, the grantee, under the mistaken supposition that such land was embraced in his deed, took possession of, occupied and cultivated it as his own, from the date of his deed, until after the conveyance from the Farmers' Loan Company to the plaintiff in 1845 ; and this occupation was continued by Huntley, and those claiming under him, up to the commencement of this suit.   At the time of the execution of the deed to the plaintiff, therefore, which deed embraced the premises in controversy, those premises were in the actual occupation of Huntley, claiming them under his deed; which however, as has been already said, and as clearly appeared upon the trial, did not in fact embrace them.   The plaintiff's deed, executed in 1845, covered the premises in question in connection with the residue of the easterly portion of the lot.   These are all the facts which it is necessary to take into consideration in disposing of the question presented, viz.: whether this possession of Huntley, originating in a mistake as to the true boundaries of his lot, constituted such an adverse possession as rendered the plaintiff's deed void under the champerty act. (1 R. S., 739, § 147.)

The great majority of the cases upon the subject of adverse possession have arisen, not under this act, but under the statute of limitations, by which an adverse possession of twenty years is made sufficient to bar the claim of the real owner. (2 R. S., 293, §§ 5, 8, *et seq.*)   If there were no difference in the

construction of these two acts, in respect to what constitutes an adverse possession under them, respectively, then perhaps the question might be regarded as settled by authority; for although there does not appear to have been any direct and explicit decision upon the point, in cases depending upon the latter statute, still the question has so often arisen incidentally in those cases, and its proper solution has been so often impliedly assumed, and by so many different tribunals, that no doubt remains as to the current of judicial opinion upon the subject.

Thus in *Jackson* v. *Loyd*, stated by WOODWORTH, J., in *Jackson* v. *Woodruff* (1 Cow., 286), where the defendant, having a deed for lot No. 4, took possession of lot No. 5, supposing it to be his lot, and claiming it as such, the Supreme Court of this State held that the defendant could not establish an adverse possession of the whole lot, by the actual improvement of a part only. This plainly implies, that to the extent of the actual occupancy of the defendant, an adverse possession was established; and that the case was so understood by Judge WOODWORTH; and that he approved of the doctrine is evident from his previous remarks, in support of which the case of *Jackson* v. *Loyd* was cited.

The Supreme Court of New Hampshire recognized the same doctrine in *Enfield* v. *Day* (7 N. H., 457), and *Hale* v. *Glidden* (10 N. H., 397). The first of these cases related to a gore of land lying between the towns of Enfield and Grantham. The proprietors of Enfield, supposing this gore to belong to them, had entered upon a portion of it, claiming the whole, and occupied such portion for more than twenty years; but it turned out that the gore was not embraced in their charter. They brought ejectment against the defendant, who was in possession of a lot within the gore. The court charged the jury, that if the proprietors of Enfield had entered upon, and had peaceable possession of the gore for more than twenty years, claiming it under their charter, they were entitled to recover, and that an entry into part, was in law for this purpose an entry into the whole. Upon motion for a new trial, this latter branch of the charge was held to be erroneous; but

the Chief Justice, who delivered the opinion of the court, expressly conceded, that to the extent of the actual occupancy of the plaintiffs, an adverse possession was made out; but held that the question as to the extent of that occupancy should have been submitted to the jury. He said: "With regard to a seisin in fact, *which would be good as against this tenant,* the cause was not put to the jury at all on that."

In *Hale* v. *Glidden* (10 N. H., 397), the language of the court was still more explicit. There the ancestor of the defendant, in locating the tract conveyed to him had, by mistake it is to be assumed, as the case does not show to the contrary, taken possession of land outside the boundaries contained in his deed. He, however, and the defendant who succeeded him, had actually improved only part of this excess, inclosing the residue by a brush fence, and occasionally cutting firewood upon it. A verdict was obtained by the defendant as to the whole of the land in controversy, which the court set aside on the ground that he could not hold, by virtue of his adverse possession, beyond the bounds of his actual occupancy and improvement. The court speaking of the defendant says: "There is sufficient evidence to show that he held *adversely* beyond the limits of the one hundred acres (the contents of the deed) claiming title in himself; and twenty years *actual possession will give him a title to the lands thus holden.*" This, although not an authoritative decision, is nevertheless a very explicit declaration of opinion, upon the point we are considering.

The Court of Appeals of Kentucky has taken the same view of this question. It was held in *McKinney* v. *Kenny* (1 A. K. Marsh, 460), that a settler who, in taking possession under his own claim, accidentally and unintentionally intrudes upon the claim of another, acquires thereby no interfering possession outside of his actual close. It was, however, assumed throughout this case, as well as in the subsequent cases of *Smith* v. *Morrow* (*Sel. Cases,* 5 Lit., 210) and *Hunter* v. *Chrisman* (6 B. Monroe, 463), that to the extent of the actual inclosure the possession in such cases must be regarded as adverse. There is, so far as I am aware, no decision nor any intimation to the

contrary in any judicial opinion.   The doctrine of the courts, therefore, evidently is that where a grantee, in taking possession under his deed, goes unintentionally and by mistake beyond his proper boundaries, and enters upon and actually occupies and improves lands not included in the deed, claiming and supposing it to be his, this occupation is to be deemed adverse within the meaning of the statute of limitations, and if continued for twenty years will bar the right of the true owner.

It cannot be denied that this doctrine is in accordance with the strict letter of the statute; and it may perhaps be equally within its spirit and intent.   It becomes necessary, therefore, to consider whether there is any difference between the statute of limitations and the statute of champerty in this respect. There is a difference in the phraseology of the two statutes which is worthy of notice.   The language of the champerty act is this: "Every grant of lands shall be absolutely void if at the time of the delivery thereof such lands shall be in the actual possession of a person claiming under a *title* adverse to that of the grantor" (1 R. S., 739, § 147); that of the statute of limitations is: "Whenever it shall appear that the occupant, or those under whom he claims, entered into the possession of any premises *under claim of title*," &c.

This difference between the phrases "claiming under *a* title" and "under a claim of title" may appear at first view to be slight and unimportant, but is nevertheless not without its significance.   That there is good reason why the two statutes should be different in this respect is plain.   Under the statute of limitations the real owner has twenty years in which to learn the fact that another is in the actual possession of his land, and may justly be charged with laches, if within that time he fails to discover and to assert his rights; but under the champerty act, an adverse possession of a single day, whether known or unknown to the grantor, avoids the conveyance.

Look then at the consequences of holding that a mere mistake in location will create an adverse possession under the latter act, especially in this country, where vast tracts, wholly

unoccupied, are constantly being laid out into lots, and sold to different parties, without the proprietors ever going at all upon any portion of the premises. If any grantee happens to make a mistake in the boundaries of his lot, and to encroach altogether unintentionally upon the adjoining lot, a thing of daily occurrence, any deed which may be given of the lot encroached upon, at least to the extent of such encroachment, would be void. This may occur, and is very likely to, in respect to numerous lots in the same tract, thus creating great embarrassment and confusion, which the grantor has no power to guard against except by an almost impracticable vigilance in regard to the actual location by every settler of the lines of his lot.

But again, the whole scope and object of the two acts is different; the champerty act is not, like the statute of limitations, a mere statute of repose. It was not intended to prescribe a limit to controversies, but simply to prevent the transfer of disputed titles. It did not attempt to terminate disputes, but only to compel their settlement between the original parties. In passing the statute of limitations the matter under consideration was the evidence of title afforded by long continued possession. The prominent thing before the legislative mind was the possession, while the principal thing in view in passing the champerty act was that of opposing titles. This difference led naturally to the difference in the phraseology adopted. In the one act mere possession with a general claim of ownership, irrespective of any particular title, was all the legislature had in contemplation; hence the language " under a claim of title :" but the other act had respect to the transfer of one of two conflicting titles. The title and not the possession was the thing prominently in view, and this led to the more specific language " claiming under *a* title." Nothing can satisfy the language of the latter act but the existence of some specific title, under which the party claims. This title may be good or bad, but there must be at least a color of title opposed to the title of the grantor in the deed; and there is no such color of title where the possession was taken purely by mistake as to the boundaries of the deed.

This distinction between the two acts accounts for the different results arrived at by the late Court of Errors in the cases of *Livingston* v. *The Peru Iron Company* (9 Wend., 512), and *Humbert* v. *Trinity Church* (24 Wend., 587). A deed fraudulently obtained is a nullity, and gives to the fraudulent grantee not even a colorable title. Hence, in the former of these cases, which depended upon the champerty act, it was held that the possession of the grantee, under such a deed, was not such an adverse possession as would avoid a subsequent deed from the true owner. The other case turned upon the statute of limitations, and under that statute, as we have seen, the thing contemplated was a mere naked possession, irrespective of any right or color of right. Therefore the court held that even fraud in obtaining or continuing the possession would not excuse the negligence of the owner in not bringing his action within the prescribed period.

No reason exists for giving to the champerty act a liberal or enlarged construction; it is the relic of an ancient policy which has been treated with but little favor by either legislatures or courts in modern times, and should not unnecessarily receive a construction which would make it a serious obstacle in the way of the transfer of undisputed titles and of the settlement of wild and uncultivated lands.

The judgment of the Supreme Court, at general term, should be reversed, and that at the special term affirmed.

All the judges concurring,

Ordered accordingly,