NATIONAL MINING Co., appellant, v. POWERS, respondent.

TITLE TO LAND BY ADVERSE POSSESSION — *Statute of Limitations — fence.* In 1872 A. bought of B. a dwelling-house and other buildings which were upon a mill site of C., a foreign corporation. C. received a patent thereto from the United States in 1869. Afterward A. inclosed these improvements with a good and substantial fence in 1872, and resided on said tract without interruption until April, 1876, when the agent of C. asserted its title to the premises and demanded rent therefor. A. testified on the trial that she always claimed to be the owner of the property, and the agent testified that he did not know that she so claimed it until April, 1876, but knew that she built the fence and occupied the premises from 1872 until October 1, 1876, when C. commenced this action *Held*, that the possession of the tract inclosed by A.'s fence was adverse to the rights of C. *Held, also*, that this action was commenced more than three years after the right to bring the same accrued, and was barred by the Statute of Limitations of this Territory.

SAME — *declaration of A.'s grantor.* Upon the trial C. offered to prove by B. that he told A. at the time of the sale in 1872, that he had no interest in the land and could sell the buildings only , that C. owned the land and the buildings had been erected by permission of C.'s agent. *Held*, that this testimony did not affect the legal relations of A. and C. after the erection of the fence, and was therefore inadmissible.

*Appeal from Third District, Lewis and Clarke County.*

THIS action was tried by WADE, C. J., with a jury.

CHUMASERO & CHADWICK, for appellant.

While possession of property is *prima facie* evidence of title, such possession avails nothing if it appears that the title is in a party out of possession, unless the Statute of Limitations can be

applied. In order to render the statute applicable, such possession must be adverse to the legal title. Cod. Sts. 515, § 4.

Adverse possession must be accompanied with the claim of the fee. Tyler on Eject. 851 *et seq.*; *Humbert* v. *Trinity Church*, 24 Wend. 586; *McClellan* v. *Kellogg*, 17 Ill. 498; *Green* v. *Neal's Lessee*, 6 Pet. 291; *Ewing* v. *Burnet*, 11 id. 41; *Harvey* v. *Tyler*, 2 Wall. 328.

The fact of possession and its character are the tests. Tyler on Eject. 860, 870–872; *Taggart* v. *Stansberry*, 2 McLean, 543; *Jackson* v. *Andrews*, 7 Wend. 152; *LaFrombois* v. *Jackson*, 8 Cow. 609.

It must be hostile in its inception. Tyler on Eject. 874–877; *Turney* v. *Chamberlin*, 15 Ill. 271; *Kirk* v. *Smith*, 9 Wheat. 241; *Brandt* v. *Ogden*, 1 Johns. 156; *Jackson* v. *Sharp*, 9 id. 163; *Guy* v. *Moffat*, 2 Bibb, 507.

A claim or title which cannot be set up by a person while in possession cannot be set up by one who comes into possession under him. *Jackson* v. *Harden*, 4 Johns. 202; *Tompkins* v. *Snow*, 63 Barb. 525.

A license given by the owner is a perfect answer to the claim of adverse possession set up by licensee or purchaser under him. *Luce* v. *Carley*, 24 Wend. 451; *Babcock* v. *Utter*, 1 Abb. 27; Tyler on Eject. 860, 879, 880.

Where party is in possession in privity with the owner, nothing short of open and explicit disavowal and disclaimer of owner's title, and assertion of title in himself, brought home to the owner will satisfy the law. *Zeller's Lessee* v. *Eckert*, 4 How. U. S. 289.

The court erred in excluding the testimony of respondent's grantor. *Jackson* v. *Bard*, 4 Johns. 230.

The proof showed that respondent's possession was not hostile in its inception, or accompanied with any claim to the fee. Respondent entered subject to appellant's title. Angell on Lim., §§ 441, 442; *Jackson* v. *Davis*, 5 Cow. 123; *Jackson* v. *M'Leod*, 12 Johns. 182.

E. W. TOOLE, for respondent.

No license was pleaded. It should have been set up in the

replication if it could be made available to defeat the operation of the Statute of Limitations. Pomeroy on Rem. 712, 734.

Respondent does not avail herself of the possession of her grantor. She claims, by virtue of four years' adverse occupancy and never recognized the license of appellant. Angell on Lim., §§ 313, 314; Cod. Sts. 515, §§ 3, 4, 6, 7.

When did appellant's right of action accrue? Appellant never asserted any title against respondent until a demand for possession was made in April, 1876, and respondent never recognized appellant's title. Cod. Sts. 393, § 6; Angell on Lim., §§ 369, 380, 384, 395, 414, 439; Tiffany & B. on Trustees, 717; 1 Pars. on Cont. 509, 514; Addison on Torts, 395, 403; Whart. on Ev. 1337, 1338; *Vansickle* v. *Haines*, 7 Nev. 249.

Appellant's right of action accrued more than three years before the commencement of this action. Respondent's purchase of her grantor was a notice to appellant that she claimed adversely. 1 Washb. Real Prop. 537–539; Smith's Landl. & T. 217.

BLAKE, J. The complaint alleges that the appellant on October 1, 1876, was seized in fee and the owner of and entitled to the possession of certain lots of land which were within the boundaries of the appellant's mill-site; and that the respondents entered into the possession of the premises and unlawfully withhold the possession thereof from the appellant. The answer denies these allegations and says that the respondents and their predecessors in interest have occupied and possessed the lots since 1865; and that they have occupied the same adversely to the appellant and all persons more than three years before the commencement of this action. The appellant's replication denied the averments of the answer.

Upon the trial the appellant introduced in evidence a patent from the United States to the appellant to said mill-site, which embraced the lots that were described in the complaint. The patent was dated October 27, 1869. In 1872 Mrs. Powers, one of the respondents, who was the real party in interest, purchased of Joseph Codling a dwelling-house, stable and chicken-house, which were on the land in controversy. The husband of Mrs.

Powers was made a party defendant in this action and is the respondent also. Mrs. Powers made a peaceable entry upon the premises as soon as she paid therefor, and afterward in 1872 put a good and substantial fence on the land, and has improved and cultivated the same ever since and occupied and used the buildings thereon. The appellant is a foreign corporation which has a place of business in this Territory. During this period the agent and superintendent of the appellant knew that Mrs. Powers was living upon the premises and improving the same, and that she had built said fence, but never demanded any rent or asserted any title thereto until April, 1876. Upon the trial Mrs. Powers testified that she always claimed to be the owner of the premises and never heard that her title was disputed by any person until September or October, 1876. The agent and superintendent of the appellant testified that he never heard that either of the respondents was claiming said land until April, 1876.

The court below entered judgment on the verdict of the jury for the respondents.

Before we consider the errors which are complained of by the appellant, we will refer to the statutes, which are applicable to the case and are contained in the chapter relating to "Limitations." Cod. Sts. 514.

"Any peaceable entry upon real estate shall be deemed sufficient and valid as a claim unless an action be commenced by the plaintiff for possession within one year from the making of such entry, or within three years from the time when the right to bring such action accrued." § 3.

"In every action for the recovery of real property or the possession thereof, the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time prescribed by law, and the occupation of the premises by another shall be deemed to have been under such legal title, unless it appear that such premises shall have been held and possessed adversely to such legal title for three years before the commencement of the action." § 4.

"When it shall appear that there has been an actual continued occupation of the premises under a claim of title, exclusive of any

other right, but not founded upon any written instrument or judgment or decree, the premises so actually occupied, and no other, shall be deemed to have been held adversely." § 6.

" For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only : First, when it has been enclosed by a good and substantial fence. Second. When it has been usually cultivated or improved." § 7.

It appears from the transcript that Codling executed a bill of sale to Mrs. Powers of the dwelling-house, stable and chicken-house, but did not make a deed of the land in dispute. It does not appear that this instrument was delivered to either of the respondents, or accepted by them. The claim of Mrs. Powers to the tract of land which she inclosed by a fence is not founded upon any written instrument, judgment or decree.

The appellant contends that the court erred in giving certain instructions, and refusing to give one, which the appellants asked to be given to the jury. We think that all the questions which have been discussed by counsel are determined by the interpretation of the statutes supra. The court below followed these statutory provisions, and made no modifications thereof, and therefore committed no error. Upon the matters of law that are involved in this action, the reports are full of decisions, which are based upon the statutes regulating the subject. Mr. Tyler gives the following rule : " Whenever the statute declares what shall constitute the possession adverse, the question is settled by a reference to the statute, and the decisions of the courts which have been made under it. But, when the statute is silent upon the subject, the question is settled by general principles which have been sanctioned and established by the courts." Tyler on Eject. 852.

Was the possession of Mrs. Powers adverse under the laws of this Territory ? She made a peaceable entry upon the premises, inclosed the same by a fence in 1872, and annually cultivated and improved the same from 1872 until 1876. If her possession during this period was adverse to that of the appellant, she ac-

quired a good title to the land which she actually occupied. The courts have held under similar statutes that adverse possession not only bars the remedy and extinguishes the right of the party having the true paper title, but vests a perfect title in the adverse holder. *Leffingwell* v. *Warren*, 2 Black, 599 ; *Meeks* v. *Vassault*, 3 Sawyer, 206 ; *Arrington* v. *Liscom*, 34 Cal. 365 ; *Cannon* v. *Stockmon*, 36 id. 535 ; *Figg* v. *Mayo*, 39 id. 262 ; *Morris* v. *De-Celis*, 51 id. 55 ; Angell on Lim. (5th ed.), ch. 31.

In *Ellicott* v. *Pearl*, 10 Pet. 412, Story, J., remarks in the opinion that " the erection of a fence is nothing more than an act presumptive of an intention to assert an ownership and possession over the property." In *Livingston* v. *Peru I. Co.*, 9 Wend. 511, Savage, C. J., says : " Where the person claiming to hold by possession has no written evidence of title, but claims by parol to be the owner, there must be an actual occupancy, a *pedis possessio*, a substantial inclosure by fence, sufficient for the protection of the crops." In *Humbert* v. *Trinity Church*, 24 Wend. 587, it is decided that where there is an actual occupation of land, an oral claim thereto is sufficient to sustain the defense of adverse possession. " Putting a fence, for example, around the land, or erecting buildings upon it, are constructive notice to the world." *Poignard* v. *Smith*, 6 Pick. 172 ; Angell on Lim. (5th ed.), § 383. While the statutes of the Territory, *supra*, control this matter, we have referred to these decisions to show that the legislative assembly recognized and adopted legal principles which had been established many years. We have also seen the effect of their application to facts, which are similar to those under consideration. Under the testimony, it is clear that the possession of Mrs. Powers, after the inclosure of the land by her fence, was adverse more than three years before this action was commenced.

The appellant insists that the court erred in excluding the following evidence, which was offered during the trial : That Codling bought the buildings in 1871, but did not buy the land because it was owned by the appellant ; that he sold the buildings to Mrs. Powers in 1872, and then told her that he claimed no interest in the ground and could only sell these improvements ;

and that he also told her that the appellant owned the land, and that the buildings had been erected by the permission of the appellant.

Does this testimony affect the character of the possession by Mrs. Powers? Does it tend to prove that she succeeded Codling as a tenant at sufferance of the appellant, if we assume that he sustained this relation? A review of the facts enables us to give to these questions satisfactory answers. We are acquainted with the rule that the declarations of a tenant in the possession of land may be given in evidence as a part of the *res gestæ* to qualify the possession ; but, before the introduction of this testimony, "it must be proved that the tenant was in possession at the time the proposed declarations were made." *Ellis* v. *Janes*, 10 Cal. 456. Codling did not deliver the possession of the land in controversy to Mrs. Powers, and there is no testimony that he was in the possession of the same when the foregoing statements were made. When Mrs. Powers constructed and maintained her fence after she purchased the interest of Codling in the buildings, the appellant and all persons were notified that she was in the actual occupancy of the premises in dispute, and that she was asserting some right which might ripen into a perfect title, if she was not interrupted in a legal manner. Codling did not erect a fence and sold none to Mrs. Powers. The fence was maintained by Mrs. Powers without any license or action on the part of the appellant, or its agents, and the relations of all the parties by virtue of the transactions between Codling and this respondent concerning the buildings are of a different nature. The appellant stood by and saw Mrs. Powers do those acts without making any objection. We will assume that this testimony had been admitted, and that the respondents knew that the appellant had received a patent to the land from the United States. Mr. Tyler, in his work on Ejectment, says: "Neither a deed nor any equivalent muniment is necessary where the possession is indicated by actual occupation, and any other evidence of an adverse claim exists. * * * An oral claim of exclusive title, or any other circumstances by which the absolute owner of land is distinguished from the naked possessor, are equally admissible and may be equally

satisfactory. * * * It has been expressly held, that neither fraud in obtaining the possession of land, nor knowledge on the part of the tenant that his claim is unfounded, wrongful and fraudulent, will excuse the negligence of the owner in not bringing his action within the prescribed period." In *Crary* v. *Goodman*, 22 N. Y. 170, SELDEN, J., says: "Under the Statute of Limitations the real owner has twenty years in which to learn the fact that another is in the actual possession of his land, and may justly be charged with *laches*, if within that time he fails to discover and to assert his rights." Under the laws of this Territory, the appellant had three years in which he was required to ascertain the facts relating to the possession of the premises by the respondents, and obtain a remedy for his wrongs. No legal excuse is offered in behalf of the appellant or its agents, for the *laches* or negligence appearing in this action. The testimony of Codling could not affect the legal rights of the appellant and respondents, and was properly rejected.

The appellant claims that the title of the respondents was not hostile in its inception. But the acts of Mrs. Powers, under the statutes of the Territory, *supra*, were of this character. She intended to hold the land which was inclosed by her fence, against the claim of all persons, and her possession was hostile or adverse to the rights of the true owner. Angell on Lim. (5th ed.), § 391 ; *Adams* v. *Burke*, 3 Sawyer, 415. The testimony of Mrs. Powers that she always claimed the title to the premises is uncontradicted.

*Judgment affirmed.*