(22 Misc. Rep. 462.)

LAMBERT v. HUBER.

(Supreme Court, Special Term, Niagara County.　January, 1898.)

1. EASEMENT—INJUNCTION—QUESTIONING JURISDICTION.
　　In an action to restrain the obstruction of an alleged alley by buildings, the objection that plaintiff should first establish his title to the land in a court of law cannot be urged where it was not raised by the answer.

2. SAME—ADVERSE POSSESSION.
　　The occupancy of part of a public alley by buildings thereon, constituting an obstruction, for over 30 years, gives the occupant a title thereto by adverse possession, and abutting owners lose their private rights as to such portions.

3. SAME—ESTABLISHMENT BY DEED.
    Where lots were described in a deed as bounded on the west by an alley,
    and a diagram referred to in the deed showed such alley as surveyed, the
    grantee of said lots acquires a legal easement in such alley.

4. SAME—ESTOPPEL TO DENY EXISTENCE.
    Where one used part of an alley for over 20 years for the ordinary uses
    and purposes of an alley, and built a sidewalk, laid sewers, and claimed an
    easement therein for ingress and egress, and never denied that the owners
    on the other side had an easement therein, he is estopped to deny the exist-
    ence of the alley.

5. SAME—NONUSER.
    An easement acquired by a grant cannot be lost by mere nonuser.

6. CHAMPERTY AND MAINTENANCE—WHAT CONSTITUTES.
    Rev. St. (9th Ed.) p. 1813, § 147, providing that every grant of lands shall
    be absolutely void if, at the time of delivery, the lands shall be in the actual
    possession of a person claiming under a title adverse to that of the grantor,
    does not apply where the person in possession had, in bad faith, and know-
    ing that he was buying a lawsuit, obtained from a stranger a quitclaim deed,
    and taken possession thereunder.

7. SAME—QUITCLAIM DEED.
    The quitclaim deed to the person in possession under the above statute is
    void, since the object thereof is to prevent the sale of lawsuits.

8. SAME—RIGHTS OF GRANTEE.
    Where one knew that his grantors had no title to the land conveyed, and
    were not in possession thereof, his taking possession under the deed is a
    trespass.

9. SAME—DEED TO PERFECT TITLE.
    Rev. St. (9th Ed.) p. 1813, § 147, making grants of land void when in the
    adverse possession of another, does not prevent the holder of the principal
    title, who is in possession, from taking conveyances to correct errors or to
    perfect his title.

10. ESTOPPEL OF TENANT TO DENY TITLE OF LANDLORD.
     Since, under Code Civ. Proc. § 373, where the relation of landlord and ten-
     ant exists, possession of the tenant is deemed the possession of the landlord,
     the tenant is estopped from claiming any adverse interest in the property
     until his tenancy terminates.

11. ADVERSE POSSESSION—BURDEN OF PROOF.
     Under Code Civ. Proc. § 368, one who establishes a legal title to land is
     presumed to have been in possession thereof, and the burden is on the person
     contesting his title to show an adverse possession for 20 years.

Action by John Lambert against George Huber for an injunction.
Judgment for plaintiff.

Edward C. Hart, for plaintiff.
A. R. Potter, for defendant.

LAUGHLIN, J.    This action is brought to enjoin the defendant
from permanently obstructing lands which plaintiff claims to own,
or to have an easement in, as an alley, to be used in connection with
his abutting premises, and also to compel the removal of obstructions
heretofore placed thereon.   I think it a proper subject for the juris-
diction of a court of equity, and the objection that plaintiff should
first establish his title in a court of law is not fatal, especially since such
objection is not raised by the answer.   Baron v. Korn, 127 N. Y. 224,
27 N. E. 804; RAnscht v. Wright, 9 App. Div. 108, 41 N. Y. Supp. 108.

Locust street, in the city of Lockport, runs north and south, and
Walnut street intersects it at right angles.   In 1822 an alley, 16 feet
6 inches in width, ran east from Locust street, parallel with, and 156½

feet north of, Walnut street.    During the year last named, Jesse P. Haines, a surveyor, in behalf of the proprietors, plotted the block of land lying between this alley and Walnut street, and abutting Locust street on the east, by dividing the same into lots running north and south, and 66 feet in width, and extending from Walnut street to the alley, and the subdivision map was filed in Niagara county clerk's office. This map designated the lot bounding on Locust street as No. 41 and that next east as No. 43.    On March 21, 1836, Lyman A. Spalding and Michael McDonald conveyed lot 43 to Mary C. Hathaway.    The record title to the southerly 82½ feet of this lot was then in McDonald's wife, and the record title of the northerly part of lot 43, so far as the abstract introduced in evidence shows it, was in Jared Comstock; but, since he never thereafter conveyed the same, or made any claim thereto, it is probable that he had conveyed it to Spalding, as otherwise the latter had no interest, and it would have been unnecessary for him to have joined in the conveyance.    That, however, is not very material in this case.    Spalding then owned said lot 41.    It is evident that by some arrangement between the owners, and perhaps by an exchange of deeds which have been lost, these lands were replotted about this time; for on December 1, 1836, Mary C. Hathaway executed to Lyman A. Spalding a purchase-money mortgage, and the description and a diagram annexed showed that this alley had been widened to 53 feet, leaving only 120 feet of land between it and Walnut street, and named Pearl street, and that no lot 41 was shown, but the lands abutting on Locust street had been subdivided into six lots, each 20 feet in width, fronting on Locust street, and extending back 70 feet 6 inches in depth, and abutting in the rear on an alley 12 feet wide, running through from Walnut street to Pearl street.    These lots were numbered, from Pearl street, 1, 3, 5, 7, 9, and 11.    In the meantime, Locust street had been widened, taking off 3 feet 3 inches of land on the east, thus leaving only 62 feet 9 inches of the land originally included in lot 41.    It will thus be seen that these new lots, which were laid out after the street had been so widened, extended into what was formerly lot 43, 7 feet 9 inches.    This new plotting of the land did show a lot 43, but it was bounded on the west by the alley, and its width was 145 feet, running from Walnut to Pearl street.    This mortgage expressly bounds the premises therein described on the west by this alley, and refers to the diagram showing it as herein described.    Haines' official maps of the city, made in 1845 and 1866, show the alley the same as it is shown on this diagram, as do also the survey and the other maps introduced in evidence.    From that time on the premises east of the alley thus designated were conveyed by the same description as that contained in the mortgage last referred to; and by a deed, with such transcription, the title was transferred to Martha Ashford on September 30, 1864.    In 1853 Lyman A. Spalding, the owner, conveyed said lots 7, 9, and 11, as aforesaid plotted, and the descriptions refer to Haines' map, which shows them running back to the alley; and in 1866 the plaintiff obtained title to these lots by the same descriptions.    On December 1, 1874, said Spalding's executrix conveyed the remaining lots, fronting on Locust street,—1, 3, and 5,—by similar descriptions; and on December 8, 1874, plaintiff obtained from such

grantee a conveyance of said lot 5 by similar description. The locus in quo is that part of the alley immediately in the rear, or east, of said lot 5.

The plaintiff, upon obtaining title, took possession of all these lots up to the westerly line of the alley, and more than 20 years before the commencement of this action he caused to be erected thereon a block of brick stores, three stories in height, extending from the Locust street line to within 10 feet 4 inches of the alley, and about the same time placed or erected smaller buildings on most of the space in the rear, extending to the line of the alley. For upward of 30 years an old building on the Ashford lands, on the east, has encroached upon and occupied 7 feet 5 inches of the easterly side of the alley, from Walnut street, northerly, along the alley, 39 feet, forming a permanent obstruction; and during the same period of time an old building and shed have occupied and permanently obstructed the easterly 10 feet 4 inches of the alley, extending from Pearl street, along the alley, southerly, $42\frac{1}{2}$ feet, also forming a permanent obstruction to that part of the alley thus occupied. This old building and shed have at all times been used and enjoyed with the Ashford lands on the east. I have no doubt that Martha Ashford and her grantees have acquired title by adverse possession to all that part of the alley thus permanently occupied by them, and plaintiff has no easement therein. Woodruff v. Paddock, 130 N. Y. 618, 29 N. E. 1021.

There have from time to time been other small, temporary structures, such as hen coops, pig pens, coal and ice sheds, erected on other portions of the alley by the plaintiff's grantors, or their or his tenants, and used and enjoyed with their or his lands on the west; but there has always been an open passageway along this alley, from Pearl street to Walnut street, excepting that during the last 16 years a fence has been erected along the southerly line of Pearl street, cutting off communication between the alley and Pearl street. I am of the opinion that the alley was originally laid out for the use of the Locust street lots, and that, by the deed of the lots with reference to the plan, the plaintiff would have acquired a legal easement, if his grantor had title. Ranscht v. Wright, 9 App. Div. 108, 41 N. Y. Supp. 108.

For upward of 20 years the plaintiff and his tenants have used that part of the alley not occupied by the buildings hereinbefore described as permanent obstructions, for the ordinary uses and purposes of an alley, and he has constructed and maintained thereon, during all that time, a plank walk, leading in from Walnut street, through the alley, to the rear of his stores, and he and his tenants have claimed, as a matter of right, and enjoyed, an easement therein for ingress and egress, and for the temporary storing of goods, wares, merchandise, and other property, as occasion required. He has constructed and maintained therein a sewer for the draining of all of his said buildings, and has also constructed and maintained the sidewalk and pavement on Walnut street in front of that part of the alley which was open. The plaintiff has at all times, until about the autumn of 1896, admitted and claimed the existence of this alley, and has not denied that the owners of the lands on the east also had an easement therein; and, although there has been no satisfactory, reliable evidence that such

owners have used the alley, or had any use for it, yet the plaintiff has repeatedly admitted this easement, and cannot now be heard to deny their rights, and such rights are not lost by mere nonuser.    Welsh v. Taylor, 134 N. Y. 450, 31 N. E. 896.

Neither Martha Ashford nor any of her successors in title ever denied the existence of the alley, or the right of the plaintiff and his grantors to an easement in that part thereof not permanently obstructed, or attempted to prevent the free use or enjoyment of such easement by the plaintiff and his grantors, excepting that on November 17, 1874, she obtained, and on December 28, 1879, placed on record, a quitclaim deed from said Lyman Spalding and wife to herself of the lands east of the alley, to which she then had title and possession; and it is claimed by the defendant that this deed embraced the alley, also, and, since it furnishes the only record title to the locus in quo claimed by the defendant, it becomes necessary to carefully consider it.    The description in the Spalding quitclaim deed of 1874 is as follows:

"Beginning at the point of intersection of the northerly line of Walnut street with the westerly line of lot No. 43, 120 feet, to Pearl street; thence westerly, along the southerly bounds of Pearl street, 145 feet, to the easterly line of lot No. 41; thence southerly, along the easterly line of said lot, 120 feet, to Walnut street; thence easterly, along the northerly line of Walnut street, 145 feet, to the place of beginning."

This description cannot be given effect if we hold that it had reference to the first plotting of the lands in 1822, which is the only plotting that contained both lots 41 and 43.    In the first place, the westerly line of lot 43, where the description commences, and the easterly line of lot 41, the return boundary, were identical, and no land would be conveyed.    Again, the width of the lands conveyed is given as 145 feet, which is the exact width of the new lot 43, and Pearl street is also referred to, and it did not exist when old lots 41 and 43 existed. The reasonable construction of this deed is, therefore, that the point of commencement was intended to be in the easterly line of lot 43; and, since the width of that lot is exactly 145 feet, being the figures given in the deed, and being the definite, unqualified length of the southerly line, we should not assume that it was intended to run westerly 19 feet 9 inches further to the old line of lot 41, which was not then shown on the map to which reference was evidently made.    Such a construction would include the rear 7¾ feet of plaintiff's lots, of which he had warranty title through the same Spalding.    If, however, this deed should be construed as including the alley, and the 7 feet 9 inches of plaintiff's lands westerly thereof, it would not avail the defendant.

As has been seen, Spalding had conveyed to Mary C. Hathaway all his right, title, and interest in and to the alley and the lands abutting thereon in 1836, and the record does not show that he ever thereafter acquired any interest therein, nor was he ever thereafter in possession thereof.    It necessarily follows that Martha Ashford obtained no additional title by this deed.    She remained the owner of the said lands easterly of the alley, which bounded on the alley, until her death, which occurred before February 14, 1895, when her will was admitted to probate.    Her executors, by deed dated October 18, 1894, but

not acknowledged until February 16, 1895, attempted to convey the alley and 4½ feet off the easterly ends of the plaintiff's lots abutting on the alley, and also some of the lands easterly of the alley, to her daughter, Martha Ashford Thompson, and the latter executed a deed, dated July 30, 1896, purporting to convey to the defendant 60 feet of the Pearl street, or northerly, end of the alley, and about 26 feet on Pearl street, easterly of and extending along the alley 60 feet. The title thus acquired is the only title defendant has. Thereupon the defendant proceeded to excavate on the premises thus conveyed for the foundation of, and to erect, a brick building, 20 feet square, in the rear of plaintiff's lot 5, and covering the entire width of the alley. The defendant then was, still is, and since the year 1890 has been, the plaintiff's tenant, occupying the store on said lot 5 as a meat market. In the spring of 1891 the defendant asked leave of the plaintiff to erect a cheap, temporary shed on the alley in the rear of lot 5, in which to keep his lard kettle and machinery. The defendant was informed that it was an alley, and that this could not be done without the consent of the owner of the lands abutting on the east, but that plaintiff had no objection if such consent were obtained. About the time the defendant obtained the deed as hereinbefore recited, he informed plaintiff that he was purchasing some lands of the Ashford estate to the east, upon which he intended to build, and asked and obtained leave of the plaintiff to sewer the same through lot 5 into Locust street, such license to terminate with his lease of lot 5; but he did not inform the plaintiff that he was about to purchase or erect a building upon the alley. As soon as the plaintiff learned of the defendant's plan and purpose, he procured from the heirs of said Mary C. Hathaway a quitclaim deed of that part of the original lot 43, which was conveyed to said Hathaway in 1836, and not thereafter transferred by her, so far as the records show, namely, the fee to the alley and the record title to 7 feet 9 inches of land abutting it on the west. The plaintiff then notified the defendant that he claimed title to the alley, and forbade the erection of the building. The defendant did not heed the notice, and the plaintiff commenced this action, and obtained an injunction pendente lite.

The defendant assails the plaintiff's deed from the Hathaway heirs as void, under section 147 of title 2 of chapter 1 of part 2 of the Revised Statutes (page 1813, 9th Ed.), which provides that:

"Every grant of lands shall be absolutely void, if at the time of the delivery thereof, such lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor."

The plaintiff, as has been shown, had not a complete record title to the rear 7 feet 9 inches of his lots, which are within the original lot 43. The plaintiff derives his title through ·Spalding, and, while the latter's deed purports to convey to the alley, Spalding had no record title to any part of lot 43, and if he had title not of record, or through lost conveyances, he had previously transferred the same to Mary Hathaway, by joining in the conveyance to her in 1836. The plaintiff had the right to perfect his record title, and was not bound to rest on his title by adverse possession. The plaintiff also had the right to

acquire the fee in that part of the alley not claimed by the defendant and not permanently obstructed. To this extent the deed from the heirs of Hathaway was certainly valid.

It has been long since decided that, under the statute hereinbefore quoted, to render a subsequent deed void, it is not essential that the person in possession, claiming under an adverse title, should have a good title. That is not the test. But I cannot concede the proposition, contended for by the learned counsel for the defendant, that a person may in bad faith obtain from a stranger to the title a quitclaim deed, and take possession of land, knowing that he has no title, and thereby render absolutely void every deed the real owner may thereafter obtain to perfect or complete his title. That is this case. When Martha Ashford, in 1874, obtained the quitclaim deed of Spalding, he was a perfect stranger to this title, and she must have known it; and when her executors conveyed to her daughter in 1895, the daughter must have known it; and so did the defendant when he took the conveyance. He understood that the locus in quo was an alley, and realized that he was buying a lawsuit, and acted in bad faith in obtaining and asserting this title as to the locus in quo. The defendant knew that his grantors had no title, and were not in possession, and in taking possession he was a mere trespasser. Jackson v. Andrews, 7 Wend. 152; Livingston v. Iron Co., 9 Wend. 512, 516–524; Humbert v. Trinity Church, 24 Wend. 610, 611, 635, 636.

Under the same statute the deed to him of the rear ends of plaintiff's lots was void, and he had and obtained no title to the locus in quo. The object of the statute was to prevent the transfer of disputed titles, and to compel the settlement of questions as to title beween the original parties; but it does not preclude the holder of the principal title, who is in possession, from taking conveyances to correct errors or to perfect his title. Crary v. Goodman, 22 N. Y. 176; Fish v. Fish, 39 Barb. 515; Jackson v. Given, 8 Johns. 105; Higginbotham v. Stoddard, 9 Hun, 1; s. c. 72 N. Y. 94; Hallas v. Bell, 53 Barb. 247–249. The defendant knew that the plaintiff, and no one else, was in possession of and using the locus in quo, claiming an interest and easement therein for alley purposes, and he was in possession thereof as plaintiff's tenant, and is estopped from claiming any adverse interest, at least until his tenancy terminates. Code Civ. Proc. § 373; In re Department of Parks, 73 N. Y. 560–567; Whiting v. Edmunds, 94 N. Y. 309; Church v. Schoonmaker, 115 N. Y. 570, 22 N. E. 575. The plaintiff, having the legal title, is presumed to have been in possession, and the burden was upon the defendant of showing an adverse possession for 20 years. Code Civ. Proc. § 368; Stevens v. Hauser, 39 N. Y. 302.

In order that either party may have this case fully reviewed by the appellate division, and the proper judgment entered by that court, without a new trial, if any of my conclusions should not be sustained, I will make no formal findings of fact and conclusions of law; but judgment may be entered on this memorandum opinion, which sufficiently states my views of the facts and law. Let judgment be accordingly entered, adjudging and determining that, prior to September 10, 1896, plaintiff and his grantors had for more than 20 years enjoyed an easement in all that part of the locus in quo, excepting the north-

easterly part, hereinbefore described as having been permanently obstructed by a building or shed, and that on said last-mentioned day he obtained from the owner of the fee a conveyance thereof, and perpetually enjoining the defendant from building thereon, or in any manner obstructing the plaintiff's free use and enjoyment thereof, in common with the defendant, as an open alley, and requiring and commanding the defendant to remove all obstruction heretofore placed therein by him, and to restore the premises to their condition at the time he first entered thereon, within 30 days after notice of entry of judgment herein, and for costs of the action, to be taxed by the clerk.

Ordered accordingly.