ANSELMO BELOTTI, Plaintiff, *v.* ANDREW BICKHARDT et al., Defendants.*

(Supreme Court, Bronx Special Term for Trials, June, 1916.)

*Equity — action to compel removal of substantial structure encroaching about twelve feet on plaintiff's land — ejectment not adequate relief — damages — rental value of land considered as vacant property.*

Charles P. Hallock, for plaintiff.

Lockwood & Lockwood, for defendants.

MULLAN, J. The plaintiff in this action seeks the aid of equity to recover possession of land, to compel the removal of a building alleged to encroach thereon to the extent of about twelve feet and to obtain compensation for the use of the land encroached upon. I had decided upon a motion made prior to the trial that, assuming the facts were as alleged in the complaint, the plaintiff should not be compelled to enforce his rights by a suit at law in ejectment, for the reason that, because of the very considerable encroachment of a substantial structure, it was doubtful whether he could obtain adequate relief in that form of action. The plaintiff is the record owner of a certain lot of

---

*Affirmed by the Appellate Division, First Department, at the October, 1917, term.— [REPR.

land situate in the borough of The Bronx, city of New York, on the easterly side of Webster avenue, between Scribner street and Gun Hill road. In the several deeds of conveyance in the chain of title the lot is described as lot K on a certain filed map made by one Josiah Briggs. The westerly boundary of the lot is therein referred to as Webster avenue, and the description contains the statement that the lot " includes as much of Berrian avenue as lies in front of this lot and will become a part thereof on the opening of Webster avenue." About twenty feet in depth of the front of lot K was in the bed of Berrian avenue, a street which was to be discontinued upon the opening of Webster avenue, which opening took place in 1897. Prior to that time, *i. e.*, in May, 1892, one Van Schaick, the then owner of three lots adjoining lot K on the south, designated as lots H, I and J on the Briggs map, erected a building which extended from the rear of the lots to the easterly side of Berrian avenue. The building thus erected actually encroached about twelve feet upon lot K. In December, 1892, Van Schaick conveyed the three lots H, I and J to one Reidel, who went into occupancy of the premises and used the building in question as a saloon and road house. In 1897, when Webster avenue was legally opened and Berrian avenue closed, Reidel raised the building to conform to the grade of Webster avenue and added an extension westwardly over the discontinued avenue to the new easterly line of Webster avenue. This addition to the building likewise encroached toward the north twelve feet upon that portion of lot K which lay in the bed of Berrian avenue until it was closed. Reidel died in 1898, and in 1906 his heirs conveyed said lots H, I and J to the defendant Bickhardt. No part of lot K was in terms conveyed by the deed to Bickhardt. Bickhardt went into possession of the lots so conveyed,

at the same time taking possession of the entire build-
ing, including the addition. The principal contention
of the defendant Bickhardt is that his possession of the
southerly twelve feet of lot K upon which the building
stands has ripened into a prescriptive right by virtue
of a continuous adverse possession since 1892, made
up by (a) the possession of Reidel from 1892 to 1898,
(b) the possession of Reidel's heirs from 1898 to 1906,
and (c) Bickhardt's possession from 1906 to the incep-
tion of this action in 1914. The defendants, having
no record or paper title to the *locus in quo,* must show,
in order to sustain their contention, that the possession
relied upon was adverse, as that term is used in sec-
tions 371 and 372 of the Code and that there was
privity of estate or contract between the successive
possessors. I find no evidence in the record of any
intention on the part of Reidel or his predecessors
in title to take possession of any portion of lot K
other than such as may be inferred from the fact
of possession alone. On the contrary, the evidence
makes it clear that the encroachment was not inten-
tional but accidental, and was due to an error made
in an old sketch map erroneously locating lots H,
I and J in a position which disclosed no encroach-
ment upon lot K, which faulty map appears to have
been very generally followed, even the tax map of
the city of New York until quite recently contain-
ing this erroneous location. Adverse possession,
however, even when held by mistake or through
inadvertence, may ripen into a prescriptive right after
twenty years of such possession (*Crary* v. *Goodman,*
22 N. Y. 170; 3 Washb. Real Prop. [6th ed.] 130), the
actual physical occupation and improvement being in
a proper case sufficient evidence of the intention to
hold adversely. *Barnes* v. *Light,* 116 N. Y. 34.

In the *Crary* case Judge Selden, in writing for the
court, said: "The doctrine of the courts, therefore,
evidently is that where a grantee, in taking possession

under his deed, goes unintentionally and by mistake beyond his proper boundaries, and enters upon and actually occupies and improves land not included in the deed, claiming and supposing it to be his, this occupation is to be deemed adverse within the meaning of the statute of limitations, and if continued for twenty years will bar the right of the true owner.'' Although the matter is by no means beyond doubt, I incline to the view that the possession of this part of the *locus in quo* may be considered adverse in character, but I am not required to pass upon that point for reasons hereinafter stated. As to the encroached upon portion of lot K that formerly was part of Berrian avenue, I think the use made of it by Reidel and his successors may be considered in the circumstances to have been adverse under subdivision 2 of section 372 of the Code. Assuming that as to any part of the encroaching structure the defendants have in other respects sufficiently proved adverse possession, there remains the question of privity. There was, of course, privity of estate between Reidel and his heirs, and that brings the possession from 1892 to 1906. In that year lots H, I and J were conveyed to the defendant Bickhardt by Reidel's heirs. No privity of estate existed between the grantors and the grantee, and unless there was privity of contract between them with respect to the *locus in quo* the subsequent possession cannot be tacked on to the previous possession. The deed to Bickhardt, however, not only failed to include any portion of lot K, but specifically described the northerly boundary of the property conveyed as lot K, thus expressly excluding any portion of the true lot K from the conveyance. *Staples* v. *Schnackenberg,* 148 App. Div. 161; *Ridley* v. *Walter,* 153 id. 65. As there was no privity of contract between the heirs of Reidel and the defendant Bickhardt with respect to lot K, Bickhardt's subsequent possession cannot be tacked on to the former possession to make up the necessary

adverse possession period of twenty years. *Smith* v. *Reich,* 80 Hun, 287; affd. on opinion below, 151 N. Y. 642; *Staples* v. *Schnackenberg, supra.* The separate possessions were considerably insufficient in themselves to support a prescriptive right. The defendants also place reliance upon those authorities holding that the record owner of land may in certain cases lose his right to property through acquiescence in a boundary location. *Baldwin* v. *Brown,* 16 N. Y. 359; *Vosburgh* v. *Teator,* 32 id. 561; *Miner* v. *Mayor,* 37 N. Y. Super. Ct. 171. It is quite true that the plaintiff's predecessors in title fell into the same error with respect to the true lines of lot K as did Bickhardt's predecessors, but I do not think that the rarely asserted and somewhat anomalous doctrine of the practical location of boundary cases has any proper application here, where the parties did not intend to settle a doubtful boundary line, as they did not know there was any question as to where the true line was. Plaintiff seeks to obtain the rental value of the twelve-foot strip, with so much of the building as covers it. I think he is entitled to the rental value of the land considered as vacant property and to no more. The proof was that the use of the land for the period of plaintiff's ownership is reasonably worth $108.44, and this amount I shall allow. Even in an ejectment action the plaintiff would not be entitled to the rental value of the buildings. Code Civ. Pro. § 1531. Defendants offered in evidence a deed from the Reidel heirs, dated April 24, 1916, purporting to release the part of lot K in question. This paper is of no service to them, as it was void for champerty (*Crary* v. *Goodman, supra*), was made after the termination of the dispossession, and therefore after the possession is deemed to have been returned to the true owner (*Staples* v. *Schnackenberg, supra*), and was made after the filing of the *lis pendens* herein. As the plaintiff elected to come into equity, in awarding him the relief he seeks I shall have

regard for the situation of the defendants. The decree shall therefore contain a provision allowing them a reasonable time in which to remove their building. As to what would be a reasonable time I shall accept suggestions from both sides.

Ordered accordingly.