In the Matter of HENRY J. FARRELL, an Attorney, Respondent.

First Department, March 10, 1933.

*William L. Wemple* of counsel [*Einar Chrystie*, attorney], for the petitioner.

Respondent in person.

FINCH, P. J.   The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division, Second Department, on March 14, 1917.

By the petition herein respondent is charged with having been guilty of misconduct as an attorney and counselor at law, as follows:

Commencing actions without making a proper and necessary investigation of the claim of his client and, more specifically, without making reasonable efforts to ascertain the contents of a survey

referred to and made part of a contract of sale. The actions in question were brought in behalf of the Milgus. Realty Corporation against Long Beach Realty Associates, Inc., to compel the latter as defendant to perform specifically a contract of sale, and also an action for damages.

The respondent is further charged with bringing said actions with knowledge that there was a mortgage for $110,000 on the premises containing a provision that said mortgage became due and payable on November 11, 1927, at the option of the holder of the mortgage if the erection of a new building on said premises had not been commenced by that time.

The respondent is further charged with having declined to accept offers which would have protected his client against all possible damage and that he resisted all efforts to obtain a speedy trial of the actions.

All the foregoing, it is urged, were part of a scheme to harass and annoy the defendant in said actions and thereby induce it to pay to the client of respondent money by way of an allowance on the purchase price fixed in the contract of sale or as a consideration for the discontinuance of said actions and the cancellation of the lis pendens and that in so doing the respondent , unduly and improperly hindered and delayed the administration of justice.

The learned referee has duly reported, finding the respondent not guilty of the aforesaid charges. The matter now comes before this court, upon motion of the petitioner that the respondent be adjudged guilty of professional misconduct, and the cross-motion of the respondent that the report of the referee be confirmed and the petition dismissed.

The facts, in brief, are as follows: On April 4, 1927, Long Beach Realty Associates, Inc., entered into a contract of sale with one Milton J. Gustofer for a parcel of real property situated on West Thirty-ninth street, borough of Manhattan, city of New York. This contract of sale contained, among other things, the following clause: " Subject to state of facts shown on survey dated August 14th, 1902, made by George C. Hollerith which survey has this day been exhibited to the purchaser and initialed by him." Prior to the execution of the contract by Gustofer, a survey had been exhibited to the purchaser and he had placed his initials thereon. This survey showed that the easterly wall of a one-story brick building erected on the premises adjoining the premises sold, encroached on said property for a distance of about fifteen feet along the boundary line between the two parcels from a depth of nothing up to four inches. Such survey also showed that the fire escape of the building on the westerly side of the premises

sold was used in common with the occupants of the adjoining building. Prior to the closing of title, Gustofer assigned the contract to the Milgus Realty Corporation.

The purchaser declined to take title because of the above encroachments. About three weeks thereafter an action was begun by the purchaser, alleging that the title was defective and unmarketable because of the encroachments of the easterly wall and the fire escape; that the plaintiff wished to assemble plottage, and that the property mentioned in the contract of sale formed part of such plottage and that he, the purchaser, intended to make a long lease to a third party to enable said party to construct a building thereon and that the purchaser so informed the defendant at the time the contract of sale was made. The complaint further alleged that it was impossible for the plaintiff to perform and make the lease without purchasing the property upon which the encroaching building stood, and that the owner of this property now demanded $50,000 above the fair market value and in excess of the price at which the plaintiff could previously have purchased the same. The relief demanded was that this sum of $50,000 be applied and allowed on account of the purchase price of the premises described in the contract of sale and that the defendant be compelled to deliver a deed to the premises upon plaintiff paying defendant the purchase price, namely, $81,760, less the sum of $50,000. A motion to dismiss this complaint was made and granted upon the ground that as the contract of sale contained a clause to the effect that title was to be taken subject to any state of facts shown by a survey initialed by the buyer, the survey became a part of the contract, that the plaintiff having made the contract a part of the complaint in the action, the survey was properly before the court on the motion and, as the survey showed all the encroachments and alleged defects of which plaintiff complained, the complaint should be dismissed. This motion to dismiss the complaint was granted. On the day that the order dismissing the complaint and canceling the *lis pendens* was entered, the respondent, as attorney for the purchaser, commenced a second action and therein alleged that a portion of the property had been encroached upon for more than twenty years so that, by reason of this adverse possession, the seller no longer possessed title. Hence the defendant was unable to perform the contract of sale. In consequence plaintiff claimed the lack of title in the seller to this portion of the premises purporting to be sold was not shown on the survey. This showed title in the seller subject to certain encroaching easements. After issue in this second action was finally joined, the defendant moved to compel the plaintiff to accept a deed to the property and pay

the purchase price therefor, provided the defendant deposited $50,000 with the clerk of the court to guarantee the payment of any judgment which might be recovered by the plaintiff in the action. This motion was granted and an order entered directing that the plaintiff accept a deed to the premises and pay the purchase price on October 28, 1927, and that the defendant within three days thereafter file with the clerk of the court a surety company bond in the sum of $50,000, conditioned for the payment of any judgment which the plaintiff might recover in the action. At the time fixed for the delivery of the deed the plaintiff defaulted. The respondent served notice of appeal. Thereupon the attorneys for the defendant, in order to avoid the delay which would ensue by reason of the prosecution of the appeal, consented to waive all rights acquired by the orders if a trial could be had immediately. When the case was reached for trial the plaintiff defaulted and the complaint was dismissed.

The basis of the charge against respondent is that he instituted the actions in bad faith and without proper investigation of the existence of reasonable grounds for bringing the same. This contention rests largely upon the fact that the respondent failed to examine the survey, subject to which his client had contracted to purchase the premises and upon which survey were shown the encroachments.

It appears that the respondent did request a copy of the survey and suggested that his client procure a copy from the vendor or its attorney. The president of the plaintiff corporation replied that he did not wish to approach the vendor for fear that the latter might dispose of the property if an action was contemplated. Mr. Gustofer, who was the only officer of respondent's client present at the closing of the contract of sale, told respondent specifically that the defects of title were not shown on the said survey, and further stated that the seller was unable to give to his company seventy-five feet of marketable frontage in West Thirty-ninth street. Respondent had no reason to believe that his client, Mr. Gustofer, would intentionally misrepresent the situation. The respondent further received from his client a memorandum of one Kanarvogel showing, as a result of his examination of the title, the existence of the aforesaid objections and encroachments. Following this information, the respondent examined the law and found authorities which at least *prima facie* sustained the actions which he had commenced. The respondent very frankly admitted a lack of knowledge of section 992 of the Civil Practice Act.

A review of the testimony and exhibits fails to disclose sufficient proof of the charge that the respondent brought an action in bad

faith and without probable cause.   As already noted, if the attorneys for the defendant had attached a copy of the initialed survey to the contract of sale, a different situation would have been presented.   The explanation which the president of the client of respondent gave the respondent, namely, that he did not wish to ask for a copy of the survey since he feared that the seller might dispose of the property if it thought a law suit was contemplated, presents a sufficient reason for not asking for a copy of the survey before the action was commenced and a *lis pendens* filed.   Furthermore, there seems to be no contradiction of the fact that the respondent was informed that the defects in the title did not appear upon the survey mentioned in the contract.

Complaint is particularly made that the respondent, instead of appealing from the judgment dismissing his complaint, started a second action.   It is a complete answer to say that when the complaint was dismissed the respondent presented an order containing a provision giving the plaintiff leave to amend and that respondent stated to the secretary of the justice who decided the motion and also to the attorneys for the defendants, that he would pay a full bill of costs if such consent was given.   When leave was not given, the respondent discussed with his client the next step to be taken.   The client urged the necessity of keeping the *lis pendens* alive, and the respondent thereupon prepared a new complaint and *lis pendens* for the second action.   The respondent had the option of appealing or of starting a second action, and the grounds for the second action were sufficiently different from the first to justify the course of respondent in starting the second action.   The first action was based upon an alleged encroachment constituting an easement; whereas the second action was based on a failure to be able to give a warranty deed to the parcel of land contracted to be sold.   What the client of the respondent wished was the land and not the building.   The contract of sale provided that the purchaser should take title subject to covenants, restrictions and easements of record.   What the respondent asserted in his complaint in the second action was that the defendant did not have title to the strip of land which had been encroached upon for more than twenty years by the adjoining building; therefore, could not convey the same, and thus was unable to perform its contract of sale.   In good faith respondent could urge that title was, therefore, unmarketable.   Authority for these contentions is found in the Civil Practice Act, sections 39 and 40, and in *Crary* v. *Goodman* (22 N. Y. 170); *Barnes* v. *Light* (116 id. 34); *Snow* v. *Monk* (81 App. Div. 206); *Kaplan* v. *Bergmann* (122 id. 876).

In *Crary* v. *Goodman* (*supra*) it was said: " The doctrine of the

courts, therefore, evidently is that where a grantee, in taking possession under his deed, goes unintentionally and by mistake beyond his proper boundaries, and enters upon and actually occupies and improves lands not included in the deed, claiming and supposing it to be his, this occupation is to be deemed adverse within the meaning of the Statute of Limitations, and if continued for twenty years will bar the right of the true owner."

In *Snow* v. *Monk* (*supra*) it was held that a two-inch encroachment was a fatal defect and justified a buyer in rejecting title as unmarketable.

In *Kaplan* v. *Bergmann* (*supra*) it was held that even where the sale was expressly made subject to an encroachment five and one-half inches in depth diminishing to a point nineteen feet and eleven inches distant, if it developed that the vendor was without title to the land beneath the encroachment, the vendee could not be compelled to take title. The court said: " The rule is well settled that an encroachment to an extent less than the reduction of the area on the lot in the case at bar constitutes a valid reason for rejecting a tendered title. (*Klim* v. *Sachs*, 102 App. Div. 44; *Snow* v. *Monk*, 81 id. 206; *Place* v. *Dudley*, 41 id. 540; *Wilhelm* v. *Federgreen*, 2 id. 483; affd., without opinion, 157 N. Y. 713.) The reasoning of the court in these cases applies with greater force to the case under consideration, where the only title the defendants could give deprived the plaintiff of the right of ownership as as well as of possession of the land included in the gore. The defendants' inability to convey to the plaintiff, as they had contracted to do, an absolute fee of the land described in the contract, subject to the encroachment shown by the survey, constituted a substantial objection to the title, which plaintiff had the right to avail himself of by refusing to accept the title tendered."

While the failure of the respondent to have knowledge of section 992 of the Civil Practice Act might be the subject of adverse comment it would not go so far as to be evidence of bad faith. The respondent could not be held guilty of professional misconduct in believing that the complaint in the second action stated a good cause of action or in filing the *lis pendens* to protect the interests of his client.

The facts and circumstances in the case at bar were sufficient to justify the actions of the respondent in view of the information conveyed to him by his client and the information which he had, based upon such investigation as he was able to make. Particularly is this true in view of the fact, as already noted, that the copy of the initialed survey was not attached to the contract of sale. If the seller had annexed a copy of the survey to said contract

of sale, as it would seem should have been done, much of the difficulty encountered by defendant would have been avoided, and it is pertinent to inquire why this was not done. Respondent on his part urges that the reason that a copy of this survey was not annexed to the contract of sale was that the seller knew that it did not have seisin to the triangular strip in question, yet it contracted to give a full covenant and warranty deed to such strip, with the premeditated intention that if the buyer initialed the survey, he could be required to take title. Respondent also urges that the seller might have prevented the situation which arose if it had annexed to the contract either a copy of the survey or had stated in the contract that as to such triangular strip it would give a bargain and sale or quitclaim deed, or any instrument of conveyance less than a full covenant and warranty deed. When the seller did not adopt either of these direct methods, but instead gave a full covenant and warranty deed and had the buyer initial the survey as a part of the contract of sale and then did not annex it, a situation was presented which went a long way to create what has since arisen.

The existence of the exculpating facts is not changed because the mortgage contained a provision that the same would become due and payable on November 11, 1927, at the option of the holder if the erection of a new building on the premises was not commenced by that time.

Nor can the respondent be held to have unduly protracted the litigation and unreasonably rejected offers of settlement.

The complaint was verified June 30, 1927, and filed with the *lis pendens* on July second. On July 5, 1927, three days thereafter, the summons and complaint were served. This fact goes a long way to show that the respondent did not unreasonably delay, since under section 120 of the Civil Practice Act plaintiff could have made personal service of the summons within sixty days after the filing of the *lis pendens*.

The first offer of settlement was submitted while the respondent was absent in Europe, and this and subsequent offers were rejected by the client of the respondent, and not by the respondent, for reasons which are set forth at length in a letter to the justice who had heard the motion to cancel the *lis pendens*. At least two of the reasons advanced were cogent. The first was that the plaintiff was required to take title and pay the purchase price therefor while the defendant was given three days thereafter to file a $50,000 bond. The plaintiff pertinently inquired what was to prevent the defendant, after receiving the money, from failing to put up the bond. Furthermore, the order required the plaintiff, prior to the trial of the issues, to perform in full; whereas the defendant had an

opportunity out of the money so put up by the plaintiff to make a deposit of cash or put up the bond. The soundness of these contentions need not be decided here, but at least there is sufficient to afford reasonable grounds for the actions of the respondent and to negative a charge of sinister motive and bad faith.

We concur in the opinion of the referee that the petitioner has failed to establish by the necessary fair preponderance of the evidence that the respondent has been guilty of any professional misconduct.

The proceeding should be dismissed.

MERRELL, MARTIN, SHERMAN and TOWNLEY, JJ., concur.

Proceeding dismissed.